IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

SHARKY'S SPORTS BAR CORP.,
DOUBLE DUCE CORP.,
PAMELA ROSSI, and STEVEN ROSSI,

     Plaintiffs,

v.                                      CASE NO.:

THE VILLAGE OF MT. MORRIS        Judge:
ILLINOIS; PHIL LABASH, individually;
MICHAEL CICCHETTI, individually;     Magistrate Judge:
CASPER MANHEIM, individually;
BROCK SWANLUND; HEATHER        JURY TRIAL DEMANDED
SWANLUND; WOLBER TRUCKING,
LLC; MORING TRANSIT, INC.,
and JUSTIN COLTRAIN,

     Defendants.
_____/

## COMPLAINT

**COME NOW** Plaintiffs SHARKY'S SPORTS BAR, CORP., and DOUBLE DUCE (the "Corporate Plaintiffs"), and Pamela Rossi and Steven Rossi (the "Individual Plaintiffs") by their attorneys, Henrichsen Law Group, complaining of Defendants Village of Mt. Morris, Illinois ("Village"), Phil Labash, Michael Cicchetti, Casper Manheim, Brock Swanlund and Heather Swanlund (collectively, "Swanlunds"), Wolber Trucking, LLC, Moring Transit, Inc., and Justin Coltrain (collectively, "Defendants"), and respectfully allege, upon information and belief, as follows:

## INTRODUCTION

1.     Corporate Plaintiff SHARKY'S SPORTS BAR CORP., had been a thriving small business for over seventeen years located at 3 N. Wesley St., in Mount Morris, Illinois until April

16, 2024, when a fire started at 1 N. Wesley St., in Mount Morris, Illinois, which shared a common wall with Sharky's and consumed and destroyed the business.

2. The fire/explosion should never have occurred, as the structure at 1 N. Wesley St., in Mount Morris, Illinois, was deemed unfit for human occupancy on April 4, 2024, and did not have running water since January 5, 2023. Justin Coltrain, who upon information and belief, caused the fire, was allowed to continue to reside at 1 N. Wesley St., in Mount Morris, Illinois, with the knowledge of Defendants and without proper remediation. As a result of the willful and wanton actions or inaction of the Defendants herein, SHARKY'S ceased operating at 3 N. Wesley St., and has suffered, and continues to suffer, loss of business revenue and diminution in the value of the business.

3. The Individual Plaintiffs, Pamela Rossi and Steven Rossi, have suffered and continue to suffer damages due to the fire, including but not limited to loss of income and non-economic damages.

4. Defendant Phil Labash, President of the Village of Mt. Morris, Illinois, authorized or allowed the demolition of the Adjacent Premises to SHARKY'S following the fire without providing due process to the Individual Plaintiffs, as required under federal and state law.

5. Defendant Michael Cicchetti, the Chief of Police for Mt. Morris, Illinois, authorized or allowed the owner of the Adjacent Premises, and anyone they deem necessary, to enter the area containing evidence of the fire and remove items out of the debris, in violation of federal and state law.

6. Defendant Casper Manheim, Building and Code Enforcement Official for Defendant Village, authorized or allowed Defendant Coltrain to remain on the Adjacent Premises from January 5, 2023, until April 4, 2024, knowing that the structure was unfit for human

occupancy due to the water being shut off for lack of payment.

7.      Due to the Defendants unlawful and willful actions, Plaintiffs suffered damages for the loss of their business and extreme emotional distress.

**PARTIES, JURISDICTION AND VENUE**

8.      At the time of the commencement of this action, Corporate Plaintiff SHARKY'S SPORTS BAR CORP., ("SHARKY'S"), formerly located at 3 N. Wesley St., Mount Morris, Illinois 61054, was and still is a domestic corporation duly authorized to conduct business in the State of Illinois. SHARKY'S operated as a Sports Bar, in Mt. Morris, Illinois for over 17 years. SHARKEY'S became a destination spot in Mt. Morris for poker runs and benefits for Wounded Warriors and surrounding law enforcement agencies, drawing customers from around Illinois.

5.      At the time of the commencement of this action, Plaintiff Double Duce Corporation, "Duce", located at 3 N. Wesley St., Mount Morris, Illinois 61054, is a domestic corporation duly authorized to conduct business in the State of Illinois.  Plaintiff Duce owned the lot at 3 N. Wesley St., in Mount Morris, Illinois.

6.      At all times relevant herein, Plaintiff Pamela Rossi was the President of SHARKY'S and was a resident of Winnebago County, Illinois.  Mrs. Rossi was physically present at her business during the fire and watched as the fire destroyed SHARKY'S.  Mrs. Rossi was married to Michael Rossi for 47 years.  Michael Rossi was the owner of SHARKY'S until he passed away on March 21, 2020.

7.      At all times relevant herein, Plaintiff Steven Rossi, Mrs. Rossi's son, was the Director of SHARKY'S, and was a resident of Winnebago County, Illinois.  Mr. Rossi worked at and managed SHARKY'S on a full-time basis since it opened on December 28, 2006.

3

8.     Defendants' Brock Swanlund and Heather Swanlund, ("Swanlunds"), were the owners of the property formerly located at 1 N. Wesley St., Mount Morris, Illinois 61054, (the "Adjacent Premises") until October 2024, and were residents of Ogle County, Illinois.  Upon information and belief, the Swanlunds rented the property to Defendant Justin Coltrain.

9.     Upon information and belief, at all times relevant herein, Defendant Justin Coltrain, ("Coltrain"), was a tenant of the Swanlunds, resided at the property formerly located at 1 N. Wesley St., Mount Morris, Illinois 61054, and was a resident of Ogle County, Illinois.

10.     Defendant, Phil Labash ("President"), was at all times relevant herein the President of the Village of Mt. Morris, Illinois, is the Chief Executive Officer of the Village, and is responsible to perform all duties as may be required of him by statute or ordinance.  *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 1, Chapter 5 § 1-5-3.   As President, "he shall have supervision over all of the executive offices of the Village and shall have the power and authority to inspect all books and records kept by any officer at any reasonable time.  *Id.* Additionally, "Whenever there is a dispute as to the respective duties or powers of any officer of the Village, this dispute shall be settled by the President; and the President shall have the power to delegate to any officer any duty which is to be performed when no specific officer has been directed to perform that duty." *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 1, Chapter 5 § 1-5-5.  "The Village President shall be the presiding officer of all regular and special meetings of the Board of Trustees and at all times when the Board meets as a Committee of the Whole."  *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 1, Chapter 6 § 1-6-6. Finally, the Village President and Board of Trustees had the full power to decide any questions arising under the provisions of the demolition of dangerous buildings. *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 9, Chapter 3 § 9-3-2.

11.     Defendant, Michael Cicchetti ("Chief of Police"), was the Chief of Police for the Village of Mt. Morris, Illinois and was at all times relevant herein, a law enforcement officer employed by the Village of Mt. Morris Police Department for the Town of Mt. Morris, Ogle County, Illinois.  As Chief, he may, "make or prescribe such rules and regulations for the conduct and guidance of the members of the Department."  *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 5, Chapter 1 § 5-1-2.  Members of the Police Department have a duty to enforce all of the ordinances and statutes in the Village and preserve order and prevent infractions of the laws and arrest violators thereof."  *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 5, Chapter 1 § 5-1-3.

12.     Upon information and belief, Defendant Casper Manheim, ("Code Official"), was the Building and Code Enforcement Official for Defendant Village at all relevant times.  As the Code Official, he was in charge of implementing, administrating and enforcing the provisions of the Property Maintenance Code.  *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 9, Chapter 2 § 9-2-2, B.

13.     At all times hereinafter mentioned, Defendant Wolber Trucking, LLC ("Wolber") was a domestic corporation duly organized and existing under and by virtue of the laws of the State of Illinois.

14.     At all times hereinafter mentioned, Defendant Moring Transit, Inc., ("Moring Transit") was a domestic corporation duly organized and existing under and by virtue of the laws of the and State of Illinois.

15.     This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343(a)(3) as this action involves a federal statute, 42 U.S.C. § 1983.

16.     The court has subject matter jurisdiction over the state law claims in this action,

pursuant to 28 U.S.C. §) 1367, because such claims are so related to the federal claims that it forms part of the same case or controversy.

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in this district.

## **FACTUAL ALLEGATIONS**

18.     Defendants Brock and Heather Swanlund owned the Adjacent Premises located at 1 N. Wesley St., Mount Morris, Illinois until October 2024, when the Defendant Village purchased the property.

19.     Defendant Justin Coltrain was a tenant of Defendant Swanlunds and resided at 1 N. Wesley St. Mount Morris, Illinois, at all times relevant herein.

20.     The Adjacent Premises shared a common wall with SHARKY'S creating a physical connection between the two properties.

21.     At all times relevant herein, Defendant Village, through its Department of Building and Code Enforcement ("DBCE") was charged with ensuring the safe and lawful use and occupation of buildings and properties through enforcement of the MT. MORRIS VILLAGE CODE ("CODE").    The DBCE is responsible for, among other things, performing plan examinations, issuing construction permits, and inspecting properties.

22.     On or about January 5, 2023, Defendant Village disconnected the water service to the Adjacent Premises, due to an outstanding water bill of $898.74 for more than 30 days, pursuant to Village Code Title 8, Chapter 1, 8-1-7(A)(2).

23.     Pursuant to Village Code Title 8, Chapter 1, 8-1-7(A)(1), if a property owner is delinquent in paying for water service, the water shall not be shut off until a hearing is held and

the Village President or his designee has made a decision on the basis of the evidence presented at the hearing.

24.     Upon information and belief, there is no mention in the Village of Mt. Morris, Illinois meeting minutes regarding a hearing that was conducted to decide whether to shut off the water at the Adjacent Premises as required by the CODE.

25.     Upon information and belief, Defendant Village knew or should have known that the water was disconnected at the Adjacent Premises from January 5, 2023, until April 4, 2024, because the water is not allowed to be shut off until a hearing had been held and the Village President made a decision on the basis of evidence presented at the hearing.  *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 8, Chapter 1 § 8-1-7(A)(1).

26.     Defendant Village allowed Defendant Coltrain to reside in the Adjacent Premises from January 5, 2023, until April 4, 2024, knowing that he had no running water and that he was only separated from SHARKY'S, a commercial business establishment, by a common wall.

27.     Defendant Swanlunds and Coltrain knew or should have known about the lack of running water to the Adjacent Premises, rendering the property uninhabitable under the CODE.

28.     At all times relevant herein, the Adjacent Premises had a surveillance camera with a light on top of it located on the top corner of the building.

29.     Upon information and belief, it was widely known throughout the Village of Mt. Morris that when the light was on, illegal narcotics were allegedly being sold out of the Adjacent Premises by Defendant Coltrain.

30.     Upon information and belief, Defendant Swanlunds knew or should have known that criminal activity was taking place at the Adjacent Premises.

31.     On or about March 29, 2024, Officer Cassie Rogers of the Mt. Morris Police Department served Coltrain with a no trespass ordinance violation regarding tools and equipment that was on the sidewalk in front of 1 N. Wesley St.

32.     On or about March 29, 2024, Officer Cassie Rogers attempted to serve Defendant Coltrain with a warrant for his arrest under 720 ILCS 5/1-3, for failing to appear in court for failing to inoculate Dog/Rabies Tags.

33.     Defendant Coltrain barricaded himself inside the residence by moving a refrigerator in front of the only entrance and exit to the Adjacent Premises.

34.     Upon information and belief Officer Rogers knew or should have known that the Adjacent Premises was uninhabitable due to the lack of running water.

35.     Upon information and belief Officer Rogers knew or should have known that the Adjacent Premises was a dangerous building pursuant to Title 9, Chapter 3, section 9-3-2, because Defendant Coltrain had so much stuff in the first floor of the Adjacent Premises that there was not a safe and adequate means of exit in case of a fire.

36.     Defendant Village knowingly allowed Defendant Coltrain to conduct a car maintenance business out of the Adjacent Premises knowing that the Adjacent Premises did not have any running water, that the business was not licensed by the State of Illinois, and that the alleged business did not have insurance.

37.     It was not until April 4, 2024, that Defendant Village, via its Building and Code Enforcement Official, Defendant Code Official, sent Defendant Brock Swanlund a certified letter informing him that the property at 1 N. Wesley St., was unfit for human occupancy due to the water being shut off for lack of payment, lack of working toilets and sinks, and disrepair of the property, pursuant to the 2021 Property Maintenance Code adopted by Defendant Village.

38.     The Defendant Village informed Defendant Swanlund that he had until April 18, 2024, to call Defendant Code Official and correct the violation.

39.     On or about April 13, 2024, Ryan Fletcher, Captain of the Mt. Morris Fire Protection District, reported a Noise Fireworks complaint against Defendant Coltrain at 1 N. Wesley St.  Upon information and belief, on or about April 13, 2024, Defendant Sutter with the Mt. Morris Police Department, arrived at the Adjacent Premises and failed to arrest Defendant Coltrain for using fireworks, in violation of Title 5, Chapter 6, section 5-6-2, at the Adjacent Premises while he knew or should have known that the Adjacent premises was found uninhabitable by Defendant Village due to the lack of running water.

40.     Between April 4, 2024, and April 16, 2024, Defendant Village knowingly failed to enforce health and safety ordinances by failing to put in place any temporary safeguards after it sent the April 4, 2024 letter, to ensure that there was no access to the Adjacent Premises, even after it knew Defendant Coltrain was shooting off fireworks at the Adjacent Property and that the property did not have any running water.

41.     On or about April 16, 2024, a fire started at 1 N. Wesley St., and several explosions could be heard soon thereafter.  The fire engulfed the Adjacent Premises and spread to SHARKY'S causing catastrophic damage to SHARKY'S.

42.     Upon information and belief, the fire was started by Defendant Coltrain shooting off fireworks in or near the Adjacent Premises.

43.     Upon information and belief, all witnesses interviewed by the Mt. Morris Police Department, other than Defendant Coltrain, stated that the fire was started by Defendant Coltrain shooting off fireworks in or near the Adjacent Premises.

44.     Despite the extensive damage, there was no immediate threat to public safety that would necessitate the urgent and immediate demolition and taking away of evidence related to the arson investigation of SHARKY'S or the Adjacent Premises.

45.     On or about April 16, 2024, the same day of the fire, Defendant Village contracted with Defendant Wolber to demolish the Adjacent Premises, and Defendant Wolber started demolishing the Adjacent Premises, causing damage to SHARKY'S.

46.     On or about April 17, 2024, one day after the fire, Defendant Village, knowingly allowed Defendant Wolber to continue to demolish the Adjacent Premises to SHARKY'S, causing additional damage to SHARKY'S.

47.     On or about April 18, 2024, while knowing that an arson investigation was being conducted by the Illinois State Fire Marshall into the fire at 1 N. Wesley St., Defendant Village contracted with Defendant Moring Transit to haul away debris/evidence from the fire, which caused further damage to SHARKY'S.

48.     Defendant Moring Transit, acting on behalf of Defendant Village, hauled away approximately 10.29 tons of debris/evidence from the unlawful demolition site of the Adjacent Premises.

49.     Upon information and belief, by allowing the unlawful demolition of the Adjacent Premises, Defendant Village intentionally interfered with the cause and origin investigation being conducted by the Illinois State Fire Marshal.

50.     Pursuant to Title 9, Chapter 3, section 9-3-4 of the CODE entitled, "Notice of Dangerous Buildings," when a building or structure within the Village is found to be a, "dangerous building," or contains an unsafe condition, prior to any demolition, the Defendant Village was at

all times relevant herein required to provide notice to all owners of record or persons having an interest therein.

51.     Upon information and belief, Defendant Swanlunds did not receive notice or an opportunity to be heard at a hearing pursuant to Title 9, Chapter 3 section 9-3-4 of the CODE, nor 65 ILCS 5/11-31-1, prior to demolition of the Adjacent Premises and SHARKY'S.

52.     Plaintiffs, who had an interest in the Adjacent Property due to the fire and resulting arson investigation, did not receive notice, or an opportunity to be heard at a hearing pursuant to Title 9, Chapter 3 section 9-3-4 of the CODE, nor 65 ILCS 5/11-31-1, prior to demolition of the Adjacent Premises and SHARKY'S.

53.     Prior to causing the demolition of any unsafe building, Defendant Village was required to apply to the Circuit Court of Ogle County for an order authorizing action to be taken, after providing at least 15 days' written notice by mail to the owners of the building pursuant to 65 ILCS 5/11-31-1.

54.     A demolition permit is also required prior to the demolition of any building pursuant to Title 9, Chapter 8 section 9-8-1 of the CODE.

55.     Neither the CODE nor Illinois Statute provides Defendant Labash or Defendant Village with emergency powers to demolish a building after a fire in the Village of Mount Morris, Illinois.

56.     On or about April 18, 2024, SHARKY'S boarded up all of the windows, added additional locks to the front and rear doors for added security, installed a no trespassing sign on the main entry door, and installed a snow fence around the Adjacent Premises and SHARKY'S, to prevent trespassers from getting injured or stealing valuables, such as equipment, liquor, and money from the legal gambling machines located therein.

57.     It was not until approximately April 27, 2024, that Defendant Village posted a warning sign on the snow fence stating that, "The structure is unsafe and its occupancy has been prohibited by the code official."

58.     It was not until April 29, 2024, that Defendant Village installed a six-foot fence around the Adjacent Premises of SHARKY'S to ensure the safety of the community or protect the scene of the arson investigation from being trespassed.

59.     Despite installing a six-foot fence, Defendant Village knowingly allowed Defendant Coltrain, and any other interested persons, to enter the unsafe structure on multiple occasions and take away debris/evidence and Plaintiffs property from the scene of the fire.

60.     Defendant Chief, authorized, "The owner and anyone they deem necessary to get their stuff out of the debris," knowing there was an arson investigation pending.

61.     Upon information and belief, once a person entered the fenced in area, they had access to SHARKY'S as well.

62.     In April of 2024, Plaintiff Steve Rossi, took a detailed inventory of the contents of SHARKY'S for insurance purposes.  Upon information and belief, several items of property from SHARKY'S are missing due to the Defendant Chief allowing entry into the fenced in area of the scene of the fire.

63.     The Illinois State Fire Marshal investigated the cause of the fire and reported on July 3, 2024, that the cause of the fire was undetermined.

64.     The July 3, 2024, report stated that, after speaking with Defendant Coltrain, the most probable ignition source at the area of origin was either careless use of fireworks or the possibility of sparks from using a grinder in the interior of the building, or Adjacent Premises.

65.     The fire and dangerous explosion caused by the unlawful, reckless and negligent acts of the Defendants herein, and their agents, servants and employees, caused serious emotional injuries and pain and suffering to the Individual Plaintiffs.

66.     The Corporate Plaintiffs were caused to sustain a complete loss of their properties and businesses, including loss of business sales, income, inventory, equipment, and the value of past, present and future business, as a result of the unlawful, reckless and negligent acts of the Defendants herein, and their agents, servants and employees.

67.     The Corporate Plaintiffs' businesses, which were destroyed in the fire and subsequent explosions, were forced to close, property and equipment was destroyed, and business operations were halted, causing damage to the Corporate Plaintiffs.

68.     Defendant Village knew that Defendant Swanlunds did not have insurance on the Adjacent Premises and that Plaintiffs intended on filing a civil lawsuit against Defendant Swanlunds.

9.     Despite knowledge of impending litigation, on October 15, 2024, Defendant Village conducted a Special Meeting approving an Agreement between Defendant Swanlunds and Defendant Village for the Purchase of the Subject Property located at 1 N. Wesley St., Mt. Morris, Illinois.

69.     The Defendant Village's purchase of the Adjacent Property, was conducted without transparency and effectively complicates Plaintiffs ability to seek full and fair relief.

**COUNT I:**
**COMPLAINT FOR MONELL LIABILITY (42 U.S.C. § 1983)**
**Decision by a Final Policymaker – Violation of Fourteenth Amendment**
**(Against Defendant Village)**

13

70. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

71. Under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978), a municipality can be found liable under 1983 only where the municipality itself causes the constitutional violation at issue.

72. At all times relevant herein, Defendant Village operated through the individual defendants, were acting under color of state law, operated as policymakers and inflicted ongoing constitutional violations and torts upon Plaintiff's.

73. The above stated acts by the individual Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers.

74. At all relevant times, the individual Defendants acted under color of State law, and in their respective individual and official capacity when they willfully, outrageously, maliciously and/or with reckless disregard of the consequences of their actions inflicted constitutional violations and outrageous tors upon Plaintiffs.

75. The Defendant President, personally and/or through is authorized agents, at all times relevant herein, acted as a final policymaker for whom the Defendant Village is liable, with respect to the unlawful demolition and resulting damage to Plaintiffs.

76. The Defendant Village delegated all policy decisions related to demolition to Defendant President and Board of Trustees. *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 9, Chapter 3 § 9-3-2.

77. As the final policymaker for Defendant Village, Defendant President developed and maintained polices, procedures, customs and/or practices which exhibited deliberate indifference to the constitutional rights of Plaintiffs.

78.     Defendant President had a duty to comply with Title 9, Chapter 3, section 9-3-4 of the CODE entitled, "Notice of Dangerous Buildings," and 65 ILCS 5/11-31-1, by providing notice to all owners of record and SHARKY'S prior to demolition.

79.     Upon information and belief, Defendant President did not provide notice or an opportunity to be heard at a hearing to Defendant Swanlunds to Title 9, Chapter 3 section 9-3-4 of the CODE, nor 65 ILCS 5/11-31-1, prior to demolition of the Adjacent Premises and SHARKY'S.

80.     Defendant President did not provide notice to Plaintiffs, who had an interest in the Adjacent Property due to the fire and resulting arson investigation, did not receive notice, or an opportunity to be heard at a hearing, pursuant to Title 9, Chapter 3 section 9-3-4 of the CODE, nor 65 ILCS 5/11-31-1, prior to demolition of the Adjacent Premises and SHARKY'S.

81.     Defendant President failed to apply to the Circuit Court of Ogle County for an order authorizing action to be taken, after providing at least 15 days' written notice by mail to the owners of the building, or those with an interest in the building, pursuant to 65 ILCS 5/11-31-1.

82.     Defendant President, his agents, servants and/or employees, the Corporate Defendants' property and when he allowed the demolition of the Adjacent Premises and SHARKY'S, in violation of the above stated ordinance and statute.

83.     Defendant President's actions in demolishing Plaintiffs' properties without proper notice or a hearing violated Plaintiffs' procedural due process rights under the Fifth and Fourteenth Amendments.

84.     As a direct and proximate result of Defendant President's deliberate indifference to custom and practice, he caused the unconstitutional deprivation of the Plaintiffs' substantive and procedural due process rights.

85. As a direct and proximate result of Defendant President's deliberate indifference, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

**COUNT II:**
**VIOLATION OF PROCEDURAL DUE PROCESS (42 U.S.C. § 1983) –**
**(Against Defendant President Individually)**

86. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

87. Defendant President had actual and constructive notice of the fire that started in the Adjacent Premises, which resulted in damage to SHARKY'S.

88. Defendant, President, was at all times relevant herein was responsible to perform all duties as may be required of him by statute or ordinance.

89. Defendant President had a duty to comply with Title 9, Chapter 3, section 9-3-4 of the CODE entitled, "Notice of Dangerous Buildings," and 65 ILCS 5/11-31-1, by providing notice to all owners of record and SHARKY'S prior to demolition.

90. Upon information and belief, Defendant President did not provide notice, or an opportunity to present evidence at a hearing to Defendant Swanlunds to Title 9, Chapter 3 section 9-3-4 of the CODE, nor 65 ILCS 5/11-31-1, prior to demolition of the Adjacent Premises and SHARKY'S.

91. Defendant President did not provide notice, or an opportunity to present evidence at a hearing to Plaintiffs, who had an interest in the Adjacent Property due to the fire and resulting arson investigation, pursuant to Title 9, Chapter 3 section 9-3-4 of the CODE, nor 65 ILCS 5/11-31-1, prior to demolishing the Adjacent Premises and SHARKY'S.

92.     Defendant President failed to apply to the Circuit Court of Ogle County for an order authorizing action to be taken, after providing at least 15 days' written notice by mail to the owners of the building, or those with an interest in the building, pursuant to 65 ILCS 5/11-31-1.

93.     Defendant President's failure to comply with the above stated ordinance and statute, showed a deliberate indifference to Plaintiffs' constitutional rights.

94.     Defendant President's deliberate failure to provide notice, or an opportunity to present evidence at a hearing, to Plaintiffs' prior to demolishing the Adjacent Premises and SHARKY'S, violated Plaintiffs' procedural due process rights under the Fifth and Fourteenth Amendments.

95.     As a direct result, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

## COUNT III:
## VIOLATION OF PLAINTIFFS FIFTH AMENDMENT RIGHTS
### (Against Defendant Village)

96.     Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

97.     Defendant President acted under the color of state law when he authorized the demolition of the adjacent property and removed evidence when he knew there was an arson investigation pending.

98.     The wrongful demolition of the Adjacent Property and removal of evidence without notice to the Plaintiffs by Defendant President deprived Plaintiffs of a constitutionally protected property interest.

99.     The actions by the Defendant Village by the Defendant President deprived Plaintiffs of their property interest without due process.

100.    The lack of notice and opportunity to be heard before the demolition and removal of evidence constitutes a violation of Plaintiffs procedural due process rights under the Fourteenth Amendment, which is applicable to the states through the Fifth Amendment.

101.    As a direct result of the unlawful demolition by Defendant Village, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

**COUNT IV:**
**COMPLAINT FOR MONELL LIABILITY (42 U.S.C. § 1983)**
**Decision by a Final Policymaker – Violation of Fourth Amendment**
**(Against Defendant Village)**

102.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

103.    Under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978), a municipality can be found liable under 1983 only where the municipality itself causes the constitutional violation at issue.

104.    The Defendant Chief of Police, personally and/or through is authorized agents, at all times relevant herein, acted as a final policymaker for whom the Defendant Village is liable, with respect to the unlawful trespass and taking of Plaintiffs property.

105.    As the final policymaker for Defendant Village Police Department, Defendant Chief of Police developed and maintained policies, procedures, customs and/or practices which exhibited deliberate indifference to the constitutional rights of Plaintiffs.

106.    Members of the Defendant Village Police Department have a duty to enforce all of the ordinances and statutes in the Village and preserve order and prevent infractions of the laws and arrest violators thereof." *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 5, Chapter 1 § 5-1-3.

107.     After the Defendant Village posted a warning sign on the snow fence stating that, "The structure is unsafe and its occupancy has been prohibited by the code official", and after installing a six-foot fence around the Adjacent Premises of SHARKY'S to ensure the safety of the community or protect the scene from being trespassed, Defendant Village, through Defendant Chief of Police, knowingly allowed Defendant Coltrain, and any other interested persons, to enter the unsafe structure on multiple occasions and take away debris/evidence and Plaintiffs property from the scene of an arson investigation.

108.     Defendant Chief of Police, authorized, "the owner and anyone they deem necessary to get their stuff out of the debris."

109.     Upon information and belief, once a person entered the fenced in area, they had access to SHARKY'S as well.

110.     In April of 2024, Plaintiff Steve Rossi, took a detailed inventory of the contents of SHARKY'S for insurance purposes.  Upon information and belief, several items of property from SHARKY'S are missing due to the Defendant Chief of police policy of allowing entry into the fenced in area of the scene of the fire, knowing that it was dangerous and that they took property from the scene.

111.     The Fourth Amendment to the United States Constitution protects individuals' against unreasonable searches and seizures.

112.     Plaintiffs had a reasonable expectation of privacy in the fenced-in area, which was part of an active arson investigation.

113.     Defendant Chief of Police's authorization for individuals to enter the area and remove property constituted an unreasonable search and seizure, infringing on Plaintiff's possessory interests in the property.

19

114.    As a direct and proximate result of Defendant Village's Chief of Police deliberate indifference to custom and practice, he caused the unconstitutional deprivation of the Plaintiffs' property rights.

115.    As a direct and proximate result of Defendant Village's Chief of Police deliberate indifference, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

**COUNT V:**
**(42 U.S.C. § 1983)**
**Violation of Fourth Amendment**
**(Against Defendant Chief of Police Individually)**

116.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

117.    The Defendant Chief of Police, personally and/or through is authorized agents, at all times relevant herein, made the decision to allow the unlawful seizure of Plaintiffs property without due process of law.

118.    Defendant Chief of Police developed and maintained policies, procedures, customs and/or practices which exhibited deliberate indifference to the constitutional rights of Plaintiffs.

119.    Members of the Defendant Village Police Department have a duty to enforce all of the ordinances and statutes in the Village and preserve order and prevent infractions of the laws and arrest violators thereof."  *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 5, Chapter 1 § 5-1-3.

120.    After the Defendant Village posted a warning sign on the snow fence stating that, "The structure is unsafe and its occupancy has been prohibited by the code official", and after installing a six-foot fence around the Adjacent Premises of SHARKY'S to ensure the safety of the community or protect the scene from being trespassed, Defendant Chief of Police, knowingly

20

allowed Defendant Coltrain, and any other interested persons, to enter the unsafe structure on multiple occasions and take away debris/evidence, including Plaintiffs property from the scene of an arson investigation.

121.    Defendant Chief of Police, authorized, "the owner and anyone they deem necessary to get their stuff out of the debris."

122.    Upon information and belief, once a person entered the fenced in area, they had access to SHARKY'S as well.

123.    In April of 2024, Plaintiff Steve Rossi, took a detailed inventory of the contents of SHARKY'S for insurance purposes.  Upon information and belief, several items of property from SHARKY'S are missing due to the Defendant Chief of police policy of allowing entry into the fenced in area of the scene of the fire, knowing that it was dangerous and that they took property from the scene.

124.    The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures.

125.    Plaintiffs had a reasonable expectation of privacy in the fenced-in area, which was part of an active arson investigation.

126.    Defendant Chief of Police's authorization for individuals to enter the area and remove property constituted an unreasonable search and seizure, infringing on Plaintiff's possessory interests in the property.

127.    As a direct and proximate result of Defendant Chief of Police deliberate indifference to custom and practice, he caused the unconstitutional deprivation of the Plaintiffs' property rights.

128.   As a direct and proximate result of Defendant Chief of Police deliberate indifference, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

**COUNT VI:**
**COMPLAINT FOR MONELL LIABILITY (42 U.S.C. § 1983)**
**Decision by a Final Policymaker**
**(Against Defendant Village)**

129.   Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

130.   Under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978), a municipality can be found liable under 1983 only where the municipality itself causes the constitutional violation at issue.

131.   Defendant Code Official, was in charge of implementing, administrating and enforcing the provisions of the Property Maintenance Code.   *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 9, Chapter 2 § 9-2-2, B.

132.   The Defendant Code Official, personally and/or through is authorized agents, at all times relevant herein, acted as a final policymaker for whom the Defendant Village is liable, with respect to the decision to allow Defendant Coltrain to reside at the Adjacent Premises knowing that the residence was inhabitable.

133.   As the final policymaker for Defendant Village Code Enforcement Department, Defendant Code Official developed and maintained policies, procedures, customs and/or practices which exhibited deliberate indifference to the constitutional rights of Plaintiffs.

134.   At all times relevant herein, Defendant Village, through its Department of Building and Code Enforcement ("DBCE") was charged with ensuring the safe and lawful use and occupation of buildings and properties through enforcement of the MT. MORRIS VILLAGE

CODE ("CODE"). The DBCE is responsible for, among other things, performing plan examinations, issuing construction permits, and inspecting properties.

135.    On or about January 5, 2023, Defendant Village disconnected the water service to the Adjacent Premises, due to an outstanding water bill of $898.74 for more than 30 days, pursuant to Village Code Title 8, Chapter 1, 8-1-7(A)(2).

136.    Upon information and belief, Defendant Village knew that the water was disconnected at the Adjacent Premises from January 5, 2023, until April 4, 2024, because the water is not allowed to be shut off until a hearing had been held and the Village President made a decision on the basis of evidence presented at the hearing. *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 8, Chapter 1 § 8-1-7(A)(1).

137.    Upon information and belief, there is no mention in the Village of Mt. Morris, Illinois meeting minutes regarding a hearing that was conducted to decide whether to shut off the water at the Adjacent Premises as required by the CODE.

138.    Defendant Village allowed Defendant Coltrain to reside in the Adjacent Premises from January 5, 2023, until April 4, 2024, knowing that he had no running water and that he was only separated from SHARKY'S, a commercial business establishment, by a common wall.

139.    As a direct and proximate result of Defendant Village's Code Enforcement Official deliberate indifference to custom and practice, Defendant Village caused the unconstitutional deprivation of the Plaintiffs' property rights.

140.    As a direct and proximate result of Defendant Village's Code Enforcement Official's deliberate indifference, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

**COUNT VII:**
**COMPLAINT FOR MONELL LIABILITY (42 U.S.C. § 1983)**
**Informal Custom**
**(Against Defendant Village)**

141.     Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

142.     Under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978) a municipality can be found liable under 1983 only where the municipality itself causes the constitutional violation at issue.

143.     Pursuant to the Defendants' persistent, maintained widespread custom and unofficial policy, of failing to provide notice pursuant to the CODE prior to a demolition, failing to ensure all buildings are habitable and safe, and allowing members of the community to enter the scene of an arson investigation, resulted in the violation of Plaintiffs' rights, as alleged herein.

144.     Defendant Village, as a matter of custom, practice or de facto policy through its policymakers, maintained a policy, custom or practice of failing to of failing to provide notice pursuant to the CODE prior to a demolition, failing to ensure all buildings are habitable and safe, and allowing members of the community to enter the scene of an arson investigation, resulted in the violation of Plaintiffs' rights, as alleged herein.

145.     Defendants knew, or should have known, that each policy, custom or practice of Defendants posed a serious harm to Plaintiffs.

146.     Defendants developed, ratified, enforced, and continue to enforce the official Village policy and/or longstanding custom with reckless and callous disregard for the constitutional rights of Plaintiffs.

147.     By reason of widespread custom and unofficial policy Defendant Village deprived Plaintiffs of the rights, immunities, and privileges guaranteed to every person in the United States,

in violation of 42 U.S.C. § 1983, including but not limited to rights guaranteed by the Fourteenth Amendment of the United States Constitution.

148.    As a direct and proximate result of Defendants deliberate indifference, reckless and/or conscious disregard of their duties, caused the unconstitutional deprivation of the Plaintiffs' substantive and procedural due process rights.

149.    As a direct and proximate result of Defendant deliberate indifference, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

## COUNT VIII:
## FAILURE TO TRAIN AND SUPERVISE
## (Against Defendant Village)

150.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

151.    Under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978) a municipality can be found liable under 1983 only where the municipality itself causes the constitutional violation at issue.

152.    Defendant Village was negligent and derelict in its duties and responsibilities by failing to provide notice pursuant to the CODE prior to a demolition, failing to ensure all buildings are habitable and safe, and allowing members of the community to enter the scene of an arson investigation, resulted in the violation of Plaintiffs' rights, as alleged herein.

153.    Defendant Village's failure to provide notice pursuant to the CODE prior to a demolition, failure to ensure all buildings are habitable and safe, and permitting members of the community to enter the scene of an arson investigation, resulted in the violation of Plaintiffs' rights, as alleged herein.

154.    Defendant Village had a duty to properly train personnel to ensure all ordinances and statutes were followed.

155.    But for the failure of Defendant Village to properly train their agents, contractors and employees under state law, Plaintiffs would not have suffered the injury to property, severe emotional distress, and other damages.

156.    As a direct and proximate result of Defendant Village's negligence, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

### COUNT IX:
### PUBLIC NUISANCE
### (Against Defendant Village)

157.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

158.    Under Illinois law, a public nuisance is an unreasonable interference with a right common to the general public, which includes activities that interfere with the health, safety, or welfare of the community.

159.    The Defendant Village had a duty to maintain public health and safety by enforcing its ordinances and codes, including the Mt. Morris Village Code ("CODE") and the 2021 Property Maintenance Code.

160.    The Defendant Village knowingly failed to enforce health and safety ordinances related to the Adjacent Premises at 1 N. Wesley St., which was unfit for human occupancy due to the lack of running water, disrepair, and ongoing illegal activities as early as January 2023.

161.    Despite being aware of the dangerous and unlawful conditions at the Adjacent Premises, the Defendant Village allowed the property to remain occupied and failed to take timely and appropriate action to abate these conditions.

162.    The Defendant Village's failure to abate the public nuisance and failure to enforce its codes and ordinances allowed the Adjacent Premises to become a dangerous building, posing a significant risk to the health, safety, and welfare of the public and neighboring properties, including SHARKY'S.

163.    The fire that originated at the Adjacent Premises on April 16, 2024, was a direct result of the Defendant Village's failure to address the dangerous conditions, constituting an unreasonable interference with public safety.

164.    The Village's actions and omissions created and maintained a public nuisance by:

    a.    Allowing the continued occupancy of an uninhabitable and unsafe structure adjacent to a commercial building;

    b.    Failing to abate the public nuisance at the Adjacent Premises; and.

    c.    Neglecting to implement necessary safeguards to protect the public and neighboring properties.

165.    As a direct and proximate result of the Defendant Village's creation and maintenance of a public nuisance, Plaintiffs suffered special damages distinct from those suffered by the general public, including but not limited to:

    a.    Destruction of their property and businesses.

    b.    Loss of business income and future earnings.

    c.    Emotional distress and mental anguish experienced by Individual Plaintiffs.

**COUNT X:**
**NEGLIGENCE - Demolition**

**(Against Defendants' Village, Wolber and Moring Transit)**

166.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

167.    Defendant Village had actual and constructive notice of the fire that started in the Adjacent Premises, which resulted in damage to SHARKY'S.

168.    Defendant Village, its agents, servants and/or employees, caused damage to SHARKY'S when they demolished the Adjacent Premises.

169.    The Defendant Village had a duty to comply with the CODE by providing notice to SHARKY'S prior to demolition.

170.    The Defendant Village had a duty to comply with 65 ILCS 5/11-31-1 by providing notice to SHARKY'S prior to demolition.

171.    Defendant Wolber was acting as an agent of Defendant Village and had a duty to conduct the demolition in a safe manner so as not to cause damage to SHARKY'S.

172.    Defendant Wolber had the duty to not create a force or instrument of harm in the performance of their work on the Adjacent Premises to SHARKY'S.

173.    Defendant Moring Transit was acting as an agent of Defendant Village when it hauled away debris/evidence from the unlawful demolition and had a duty to conduct the demolition in a safe manner so as not to cause subsequent damage to SHARKY'S.

174.    Defendant Moring Transit had a duty to not create a force or instrument of harm in the performance of their work on the Adjacent Premises to SHARKY'S.

175.    Defendant Village had a duty to ensure that no persons entered the scene of an active arson investigation.

176.    Each of the Defendants had a duty to the Plaintiffs to not cause further property damage to SHARKY'S.

177.    Defendants Village, Wolber, and Moring Transit were grossly negligent and reckless in the management and supervision of the demolition of the Adjacent Premises.

178.    At all times relevant herein, Defendant Village was reckless, careless and negligent in violating applicable laws, rules and regulations, namely 65 ILCS 5/1–4–7 for failing to provide notice to Plaintiffs prior to demolishing the Adjacent Premises, which caused damage to SHARKY'S and the Adjacent Premises.

179.    At all times relevant herein, Defendant Village was reckless, careless and negligent in violating applicable laws, rules and regulations, namely 65 ILCS 5/11-31-1, for injury to SHARKY'S due to the unlawful demolition of the Adjacent Premises.

180.    At all times relevant herein, Defendant Village was reckless, careless and negligent in violating applicable laws, rules and regulations, namely Section 112.2 of the 2021 Property Maintenance Code, by failing to put in place any temporary safeguards after it sent the April 4, 2024 letter.

181.    At all times relevant herein, Defendant Village was grossly negligent and reckless for failing to condemn the Adjacent Property as unfit for human occupancy after the water was discontinued on the Adjacent Premises on January 5, 2023.

182.    At all times relevant herein, Defendant Village's conduct was willful or wanton in that it shows an utter indifference to or conscious disregard for the safety of others or their property.

183.    Because of the foregoing, the Corporate Plaintiffs sustained severe economic injuries, including but not limited to loss of business sales, income, inventory, equipment, value of past, present and business and goodwill of business.

184. Because of the foregoing, the Individual Plaintiffs sustained emotional injuries.

185. By reason of the foregoing, all Plaintiffs were damaged in sums which exceed the jurisdictional limits of the court which will be determined at trial.

186. Due to the foregoing negligent, reckless, egregious and wanton conduct of the Defendants, and their complete disregard for public safety, Plaintiffs demand an award of punitive damages against all Defendants', except Defendant Village.

**COUNT XI:**
**NEGLIGENCE – Damage to Property**
**(Against Defendants' Village, Chief of Police (Individually))**

187. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

188. Defendant Village had a duty to ensure that no persons entered the debris area due to the unsafe conditions of the Adjacent Premises and SHARKY'S.

189. At all times relevant herein, Defendant Village was reckless, careless and negligent in violating applicable laws, rules and regulations, namely Section 112.2 of the 2021 Property Maintenance Code, by failing to put in place any temporary safeguards after it sent the April 4, 2024 letter.

190. Defendant Chief of Police order allowing anyone the owner deems necessary to enter the fence area to rummage around in the debris/evidence constitutes the utter indifference to or conscious disregard for the safety of others or their property.

191. Defendant Chief of Police decision to allow anyone the owner deems necessary to enter the fence area to rummage around in the debris/evidence led to the destruction or alteration of critical evidence, thereby hindering the investigation and any subsequent legal proceedings.

192.    Defendant Village's conduct was willful or wanton in that it shows an utter indifference to or conscious disregard for the safety of others or their property.

193.    Defendant Chief of Police's conduct was an abuse of discretion and was willful or wanton in that it shows an utter indifference to or conscious disregard for the safety of others or their property.

194.    Because of the foregoing, the Corporate Plaintiffs sustained severe economic injuries, including but not limited to loss of business sales, income, inventory, equipment, value of past, present and business and goodwill of business.

195.    Because of the foregoing, the Individual Plaintiffs sustained emotional injuries.

196.    By reason of the foregoing, all Plaintiffs were damaged in sums which exceed the jurisdictional limits of the court which will be determined at trial.

197.    Due to the foregoing negligent, reckless, egregious and wanton conduct of the Defendants, and their complete disregard for public safety, Plaintiffs demand an award of punitive damages against Defendants.

<u>**COUNT XII**</u>
<u>**NEGLIGENCE**</u>
**(Against Defendant Brock and Heather Swanlund)**

198.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

199.    Defendants Swanlund had a duty to maintain the Adjacent Property in a reasonably safe condition and to prevent foreseeable harm.

200.    Defendants Swanland were grossly negligent and reckless in the management, operation and maintenance of the Adjacent Premise, by not having running water at the Adjacent

Premises, and not rectifying code violations, which contributed to the fire and explosion complained of herein.

201.    Defendants breached this duty by:

      a.     Allowing illegal activities to occur on the premises.

      b.     Failing to maintain the property in compliance with health and safety codes.

      c.     Ignoring notices regarding the uninhabitable condition of the property.

202.    As a direct and proximate result of Defendants' negligence, Plaintiffs suffered damages, including property loss, business interruption, and emotional distress.

**COUNT XIII**
**NEGLIGENCE**
**(Defendant Coltrain)**

203.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

204.    As a tenant of the Adjacent Property, Defendant Coltrain had a duty to maintain the Adjacent Property in reasonably good condition and to prevent foreseeable harm.

205.    Upon information and belief, Defendant Coltrain was grossly negligent and reckless in the maintenance of the Adjacent Premise, by recklessly using fireworks in or near the Adjacent premises, which may have contributed to the fire and explosion complained of herein.

206.    Upon information and belief, Defendant Coltrain was grossly negligent and reckless in the maintenance of the Adjacent Premise, by using a grinder inside the Adjacent Premises knowing he did not have running water and that the grinder may cause sparks, which may have contributed to the fire and explosion complained of herein.

207.    Defendant breached this duty by:

a.  Allowing illegal activities to occur on the premises.

b.  Failing to maintain the property in compliance with health and safety codes.

c.  Ignoring notices regarding the uninhabitable condition of the property.

208.  As a direct and proximate result of Defendant's negligence, Plaintiffs suffered damages, including property loss, business interruption, and emotional distress.

## COUNT XIV
### Intentional Infliction of Emotional Distress
### (Individual Defendants)

209.  Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

210.  Individual Defendants, President, Chief of Police, and Code Official, engaged in extreme and outrageous behavior as detailed above.

211.  Individual Defendants extreme and outrageous behavior knew or should have known, that their conduct would cause Individual Plaintiffs severe emotional distress.

212.  As a direct and proximate result of the Individual Defendants' outrageous conduct, Individual Plaintiffs were injured and suffered actual damages.

## COUNT XV
### Complaint for INJUNCTIVE RELIEF – 735 ILCS 5/11-101
### (Defendant Village)

213.  Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

214. Defendant Village knew that Defendant Swanlunds did not have insurance on the Adjacent Premises and that Plaintiffs intended on filing a civil lawsuit against Defendant Swanlunds.

215. Despite knowledge of impending litigation, on October 15, 2024, Defendant Village conducted a Special Meeting approving an Agreement between Defendant Swanlunds and Defendant Village for the Purchase of the Subject Property located at 1 N. Wesley St., Mt. Morris, Illinois.

216. The Defendant Village's purchase of the Adjacent Property, was conducted without transparency and effectively complicates Plaintiffs ability to seek full and fair relief.

217. Given that the Adjacent Property was involved in a fire that caused significant damage to SHARKY'S, Plaintiffs possess a clearly ascertainable right or interest in the Adjacent Premises.

218. Plaintiffs have a clearly ascertainable right in need of protection, specifically the right to seek full and fair relief for the destruction of their business.

219. Due to the Defendant Village's purchase of the Adjacent Premises, knowing that Defendants Swanlund had no insurance and, upon information and belief, no additional assets, Plaintiffs have suffered irreparable harm, if the Defendant Village's purchase of the Adjacent Property is allowed to stand, as it complicates Plaintiffs ability to seek full and fair relief. in that no redress or compensation can be had at law.

220. The Defendant Village's purchase of the Adjacent Premises provided the Plaintiff's no adequate remedy at law, monetary damages cannot adequately compensate for the injury and the injury cannot be measured by pecuniary standards.

221.    Plaintiffs are likely to succeed on the merits of their complaint, as the Defendant Village's actions were conducted without transparency and in knowledge of impending litigation.

222.    The Plaintiffs will suffer more harm without the injunction that the Defendant Village will suffer with the injunction.

**COUNT XVI**
**Complaint for UNJUST ENRICHMENT**
**(Defendant Village)**

223.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 as if set forth fully herein.

224.    Defendant Village has unjustly retained a benefit to the Plaintiffs' detriment by purchasing the Adjacent Premises knowing that Defendants Swanlund had no insurance and, upon information and belief, no additional assets.

225.    The Defendant Village has unjustly retained the benefit of the Adjacent Property to Plaintiffs detriment.

226.    Defendant Village's retention of the benefit violates the fundamental principles of justice, equity, and good conscience, as it was done with knowledge of impending litigation and without transparency.

227.    The circumstances indicate that the Defendant Village's actions were not intended to be gratuitous and were conducted in a manner that complicates Plaintiff's ability to seek full and fair relief.

**WHEREFORE,** Because of the foregoing, Plaintiffs respectfully request that this Court:

a.    Grant Injunctive relief preventing Defendant Village from retaining the Adjacent Property;

b.    Award Plaintiff damages for unjust enrichment;

    c.   Award Plaintiff damages for lost profit, income, inventory, equipment, value of

         the business and goodwill of business;

    d.   Award Plaintiff costs and attorneys' fees;

    e.   Punitive damages;

    f.   Grant such other and further relief as this Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs hereby demand a jury trial on all claims in this Complaint.

Dated: November 13, 2024,          Respectfully submitted,

By: <u>*/s/* Renee Cook</u>
Renee Cook
IARDC No.: 6288807
Cook Law Office PLLC
815-243-2439
6625 Argyle Forest Blvd., Ste. 4, #3177
Jacksonville, FL 32244

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, which will automatically send email notification of all documents required to be served by Fed.R.Civ.P. 5(a) in a manner authorized by Fed.R.Civ.P. 5(b) and (c), to the attorneys of record on this 13th day of November 2024.

By: /s/ Renee Cook
Renee Cook