IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

SHARKY'S SPORTS BAR CORP.,
DOUBLE DUCE CORP.,
PAMELA ROSSI, and STEVEN ROSSI,

     Plaintiffs,

v.

THE VILLAGE OF MT. MORRIS
PHIL LABASH, individually;
MICHAEL CICCHETTI, individually;
CASPER MANHEIM, individually;
BROCK SWANLUND; HEATHER
SWANLUND; R.E. WOLBER & SONS
EXCAVATING INC., MORING
TRANSIT, INC., and JUSTIN
COLTRAIN, and CASPER'S HOME
INSPECTION, LLC.

     Defendants.

_____/

CASE NO.:  24-cv-50457

Judge:  Iain D. Johnston ILLINOIS;

Magistrate Judge: Margaret J. Schneider

JURY TRIAL DEMANDED

**FOURTH AMENDED COMPLAINT**

     **COME NOW** Plaintiffs SHARKY'S SPORTS BAR, CORP., and DOUBLE DUCE

(the "Corporate Plaintiffs"), and Pamela Rossi and Steven Rossi (the "Individual Plaintiffs") by

their attorneys, Cook Law Office, PLLC, complaining of Defendants, The Village of Mt. Morris,

Illinois ("Village"), Phil Labash, Michael Cicchetti, Casper Manheim, Brock Swanlund and

Heather Swanlund (collectively, "Swanlunds"), R.E. Wolber & Sons Excavating, Inc., Moring

Transit, Inc., Justin Coltrain and Casper's Home inspection, LLC (collectively, "Defendants"),

and respectfully allege, upon information and belief, as follows:

**INTRODUCTION**

    1.    Corporate Plaintiff SHARKY'S SPORTS BAR CORP., ("SHARKY'S") had

1

been a thriving small business for over seventeen years located at 3 N. Wesley St., in Mount Morris, Illinois until April 16, 2024, when a fire started at 1 N. Wesley St., in Mount Morris, Illinois, which shared a common wall with Sharky's that consumed and destroyed the business.

2. The fire/explosion should never have occurred, as the structure at 1 N. Wesley St., in Mount Morris, Illinois, was deemed unfit for human occupancy on April 4, 2024, and did not have running water since January 5, 2023. Justin Coltrain, who upon information and belief, caused the fire, was allowed to continue to reside at 1 N. Wesley St., in Mount Morris, Illinois, with the knowledge of Defendants and without proper remediation. As a result of the willful and wanton actions or inaction of the Defendants herein, SHARKY'S ceased operating at 3 N. Wesley St., and has suffered, and continues to suffer, loss of business revenue and diminution in the value of the business.

3. The Individual Plaintiffs, Pamela Rossi and Steven Rossi, have suffered and continue to suffer damages due to the fire, including but not limited to loss of income and non-economic damages.

4. Defendant Phil Labash, President of the Village of Mt. Morris, Illinois, authorized or allowed the demolition of the Adjacent Premises to SHARKY'S following the fire without providing due process to the Individual Plaintiffs, as required under federal and state law.

5. Defendant Michael Cicchetti, the Chief of Police for Mt. Morris, Illinois, authorized or allowed the owner of the Adjacent Premises, and anyone they deem necessary, to enter the area containing evidence of the fire and remove items out of the debris, in violation of federal and state law.

6. Defendant Casper Manheim, Building and Code Enforcement Official for

2

Defendant Village, authorized or allowed Defendant Coltrain to remain on the Adjacent Premises from January 5, 2023, until April 4, 2024, knowing that the structure was unfit for human occupancy due to the water being shut off for lack of payment.

7.     Due to the Defendants' unlawful and willful actions, the Plaintiffs suffered damages including, but not limited to, the loss of their business and extreme emotional distress.

## PARTIES, JURISDICTION AND VENUE

8.     At the time of the commencement of this action, Corporate Plaintiff SHARKY'S, formerly located at 3 N. Wesley St., Mount Morris, Illinois 61054, was and still is a domestic corporation duly authorized to conduct business in the State of Illinois. SHARKY'S operated as a Sports Bar, in Mt. Morris, Illinois for over 17 years. SHARKEY'S became a destination spot in Mt. Morris for poker runs and benefits for Wounded Warriors and surrounding law enforcement agencies, drawing customers from around Illinois.

9.     At the time of the commencement of this action, Plaintiff Double Duce Corporation, "Duce", located at 3 N. Wesley St., Mount Morris, Illinois 61054, is a domestic corporation duly authorized to conduct business in the State of Illinois. Plaintiff Duce owned the lot at 3 N. Wesley St., in Mount Morris, Illinois.

10.     At all times relevant herein, Plaintiff Pamela Rossi was the President of SHARKY'S and was a resident of Winnebago County, Illinois. Mrs. Rossi was physically present at her business during the fire and watched as the fire destroyed SHARKY'S. Mrs. Rossi was married to Michael Rossi for 47 years. Michael Rossi was the owner of SHARKY'S until he passed away on March 21, 2020.

11.     At all times relevant herein, Plaintiff Steven Rossi, Mrs. Rossi's son, was the Director of SHARKY'S, and was a resident of Winnebago County, Illinois. Mr. Rossi worked at and

managed SHARKY'S on a full-time basis since it opened on December 28, 2006.

12. Defendants' Brock Swanlund and Heather Swanlund, ("Swanlunds"), were the owners of the property formerly located at 1 N. Wesley St., Mount Morris, Illinois 61054, (the "Adjacent Premises") until October 2024, and were residents of Ogle County, Illinois. Upon information and belief, the Swanlunds rented the property to Defendant Justin Coltrain and Amanda Newby.

13. Upon information and belief, at all times relevant herein, Defendant Justin Coltrain, ("Coltrain"), was a tenant of the Swanlunds, resided at the property formerly located at 1 N. Wesley St., Mount Morris, Illinois 61054, and was a resident of Ogle County, Illinois.

14. Defendant, Phil Labash ("President"), was at all times relevant herein the President of the Village of Mt. Morris, Illinois, is the Chief Executive Officer of the Village, and is responsible to perform all duties as may be required of him by statute or ordinance. *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 1, Chapter 5 § 1-5-3. As President, "he shall have supervision over all of the executive offices of the Village and shall have the power and authority to inspect all books and records kept by any officer at any reasonable time. *Id.* Additionally, "Whenever there is a dispute as to the respective duties or powers of any officer of the Village, this dispute shall be settled by the President; and the President shall have the power to delegate to any officer any duty which is to be performed when no specific officer has been directed to perform that duty." *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 1, Chapter 5 § 1-5-5. "The Village President shall be the presiding officer of all regular and special meetings of the Board of Trustees and at all times when the Board meets as a Committee of the Whole." *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 1, Chapter 6 § 1-6-6. Finally, the Village President and Board of Trustees had the full power to decide any questions arising under the provisions of

4

the demolition of dangerous buildings. *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 9, Chapter 3 § 9-3-2.

15.     Defendant, Michael Cicchetti ("Chief"), was the Chief of Police for the Village of Mt. Morris, Illinois and was at all times relevant herein, a law enforcement officer employed by the Village of Mt. Morris Police Department for the Town of Mt. Morris, Ogle County, Illinois. As Chief, he may, "make or prescribe such rules and regulations for the conduct and guidance of the members of the Department." *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 5, Chapter 1 § 5-1-2. Members of the Police Department have a duty to enforce all of the ordinances and statutes in the Village and preserve order and prevent infractions of the laws and arrest violators thereof. *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 5, Chapter 1 § 5-1-3.

16.     Upon information and belief, Defendant Casper Manheim, ("Code Official"), was the Building and Code Enforcement Official for Defendant Village Building Department at all relevant times. As the Code Official, he was in charge of implementing, administrating and enforcing the provisions of the Property Maintenance Code and the 2021 edition of the International Property Maintenance Code (hereinafter "IPMC")[1] adopted in full by Defendant Village. *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 9, Chapter 2 §§ 9-2-1, 9-2-2.[2] As the Code Official for Defendant Village, he had a duty to enforce the Property Maintenance Code for the Village by regulating the building and structures therein. See Village of Mt. Morris, Illinois Code of Ordinances, Title 9, Chapter 2 §§ 9-2-1, 9-2-2.

---

[1] *See* https://codes.iccsafe.org/content/IPMC2021P1
[2] *See* https://codelibrary.amlegal.com/codes/mtmorrisil

5

17. Defendant Manheim, as the Code Official for Defendant Village was charged with ensuring the safe and lawful use and occupation of residential and non-residential structures and was responsible for ensuring the, "minimum requirements and standards for premises, structures, equipment and facilities for light, ventilation, space, heating, sanitation, protection from the elements, a reasonable level of safety from fire and other hazards, and for a reasonable level of sanitary maintenance; the responsibility of owners, an owner's authorized agent, operators and occupants; the occupancy of existing structures and premises, and for administration, enforcement and penalties." *See IPMC* § 101.2.

18. At all times hereinafter mentioned, Defendant Casper's Home Inspection, LLC, ("Casper's") was a domestic corporation duly organized and existing under and by virtue of the laws of the State of Illinois. Upon information and belief, Defendant Casper Manheim is the owner of Casper's.

19. At all times hereinafter mentioned, Defendant R.E. Wolber & Sons Excavating, Inc., ("Wolber") was a domestic corporation duly organized and existing under and by virtue of the laws of the State of Illinois.

20. At all times hereinafter mentioned, Defendant Moring Transit, Inc., ("Moring Transit") was a domestic corporation duly organized and existing under and by virtue of the laws of the State of Illinois.

21. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343(a)(3) as this action involves a federal statute, 42 U.S.C. § 1983.

22. The court has subject matter jurisdiction over the state law claims in this action, pursuant to 28 U.S.C. § 1367, because such claims are so related to the federal claims that it forms part of the same case or controversy.

6

23.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in this district.

**FACTUAL ALLEGATIONS**

24.     Upon information and belief, Defendant Brock and Heather Swanlund purchased the Adjacent Premises in March 2022 located at 1 N. Wesley St., Mount Morris, Illinois, and were the owners of that property until October 2024, when the Defendant Village purchased the property.

25.     The property at 1 N. Wesley St., Mount Morris, Illinois 61054, was zoned as commercial/residential property and allowed for a second-floor residential apartment.

26.     Defendant Justin Coltrain was a tenant of Defendant Swanlunds and resided in the second-floor apartment with his girlfriend, Amanda Newby, at 1 1/2 N. Wesley St. Mount Morris, Illinois, at all times relevant herein.

27.     The Adjacent Premises shared a common wall with SHARKY'S creating a physical connection between the two properties.

28.     At all times relevant herein, Defendant Village, through its Building Department Code Enforcement Official, Defendant Manheim, was charged with ensuring the safe and lawful use and occupation of residential and non-residential structures.

29.     On or about January 5, 2023, Defendant Village disconnected the water service to the Adjacent Premises, due to an outstanding water bill of $898.74 for more than 30 days, pursuant to Village Code 1979 Code § 7-4-6, which currently corresponds to Title 8, Chapter 1, 8-1-7(A)(2). The Discontinuation of Service Notice was directed to Swanlund at 1 ½ N. Wesley.

30.     Upon information and belief, the last water bill sent out to Defendant Swanlund at 1 ½ N. Wesley was dated March 1, 2023, and showed a balance of $1,985.00.

7

31. Pursuant to Village Code Title 8, Chapter 1, 8-1-3(A), every application for water service shall be made by and signed by the owner of the premises to be served. Every premises served shall constitute a separate account in the owner's name. All bills for water service shall be the responsibility of, and sent to, the owner of the premises served. owner of the premises served, included successors in title, shall be deemed to be the applicant, customer, consumer and user for all water service provided to the premises regardless of whether such owner or successor in title is the end-user of the water service provided or whether such owner or successor has signed the service application.

32. Pursuant to Village Code Title 8, Chapter 1, 8-1-7(A)(1), if a property owner is delinquent in paying for water service, the water shall not be shut off until a hearing is held and the Village President or his designee has made a decision on the basis of the evidence presented at the hearing.

33. Upon information and belief, there is no mention in the Village of Mt. Morris, Illinois meeting minutes regarding a hearing prior to January 5, 2023, that was conducted to decide whether to shut off the water at the Adjacent Premises as required by the CODE or IPMC.

34. Upon information and belief, Defendant Village and Defendant Manheim knew or should have known that Defendant Coltrain was residing in the Adjacent Premises from January 5, 2023, until April 4, 2024, without running water in violation of Section 111.1.3 of the IMPC, and that he was only separated from SHARKY'S, a commercial business establishment, by a common wall.

35. Whenever the code official determines that there has been a violation of this code or has grounds to believe that a violation has occurred, notice shall be given to the owner, which shall be in writing and include a correction order allowing a reasonable time to make the repairs

and improvements required to bring the dwelling unit or structure into compliance. *See* IPMC at §§ 111.4 – 111.4.1. Upon failure of the owner to comply with the notice provisions within the time given, the code official shall post on the premises a placard bearing the word "Condemned," and a statement of the penalties provided for occupying the premises. *Id.* at § 111.7.

36. Upon information and belief, neither Defendant Village nor Defendant Manheim provided notice to Defendant Swanland's that included a correction order from January 5, 2023, until April 3, 2024.

37. As the code official for the Defendant Village, Defendant Manheim was required to make all of the required inspections and if he had reasonable cause to believe there existed a code violation in a structure or upon a premises he was authorized to enter the structure or premises at reasonable times to inspect or perform the duties imposed by the code. *See IPMC § 105.2 – 105.3.*

38. When a structure is found by the code official to be unfit for human occupancy, or is found unlawful, such structure shall be condemned. *See IPMC § 111.1 (Unsafe conditions).*

39. A structure is unfit for human occupancy whenever the code official finds that the structure is unsafe, unlawful, or because of the degree to which the structure is in disrepair or lacks maintenance, is unsanitary … *See IPMC § 111.1.3.*

40. A dangerous structure or premises includes a structure that is clearly unsafe for its use and occupancy. *See* IPMC at § 111.1.5(6). The Mt. Morris CODE specifically states all buildings or structures so old, dilapidated or out of repair as to be dangerous, unsafe, unsanitary or otherwise unfit for human use, are declared to be public nuisances affecting peace and safety. See the CODE at Title 4, Chapter 1§ 4-1-4.

41. The code official shall cause a report to be filed on an unsafe condition which shall state the occupancy of the structure and the nature of the unsafe condition. *See* IPMC at § 111.3.

42.     Upon information and belief, neither Defendant Village nor Defendant Manheim filed a report on the unsafe condition pursuant to IPMC § 111.1.3, provided notice to the owner to bring the dwelling into compliance pursuant to IPMC §§ 111.4 – 111.4.1, nor condemned the building pursuant to IPMC § 111.7.

43.     Notwithstanding the fact that Defendant Village disconnected the water service to the Adjacent Premises due to an outstanding water bill on January 5, 2023, neither Defendant Village nor Defendant Manheim declared the property unfit for human occupancy until April 4, 2024.

44.     Defendant Swanlunds and Coltrain knew or should have known about the lack of running water to the Adjacent Premises, rendering the property uninhabitable under the CODE.

45.     At all times relevant herein, the Adjacent Premises had a surveillance camera with a light on top of it located on the top corner of the building, and had electrical wires hanging from the roof.

46.     Upon information and belief, it was widely known throughout the Village of Mt. Morris that when the light was on, illegal narcotics were allegedly being sold out of the Adjacent Premises by Defendant Coltrain.

47.     Upon information and belief, Defendants knew or should have known that criminal activity was taking place at the Adjacent Premises.

48.     Defendant Village and Defendant Swanlunds knowingly allowed Defendant Coltrain to conduct a car maintenance business out of the Adjacent Premises knowing that the Adjacent Premises did not have any running water, that the business was not licensed by the State of Illinois, and that the alleged business did not have insurance.

49.     On or about March 29, 2024, Officer Cassie Rogers of the Mt. Morris Police

Department served Coltrain with a no trespass ordinance violation regarding tools and equipment that was on the sidewalk in front of 1 N. Wesley St.

50. On or about March 29, 2024, Officer Cassie Rogers attempted to serve Defendant Coltrain with a warrant for his arrest under 720 ILCS 5/1-3, for failing to appear in court for failing to inoculate Dog/Rabies Tags.

51. Defendant Coltrain barricaded himself inside the residence by moving a refrigerator in front of the only entrance and exit to the Adjacent Premises.

52. Upon information and belief Officer Rogers knew or should have known that the Adjacent Premises was uninhabitable due to the lack of running water.

53. Upon information and belief Officer Rogers knew or should have known that the Adjacent Premises was a dangerous building pursuant to Title 9, Chapter 3, section 9-3-2, because Defendant Coltrain had so much stuff in the first floor of the Adjacent Premises that there was not a safe and adequate means of exit in case of a fire.

54. It was not until April 4, 2024, that Defendant Village, via its Building and Code Enforcement Official, Defendant Code Official, sent Defendant Brock Swanlund a certified letter informing him that the property at 1 N. Wesley St., was unfit for human occupancy due to the water being shut off for lack of payment, lack of working toilets and sinks, and disrepair of the property, pursuant to the 2021 Property Maintenance Code adopted by Defendant Village.

55. The Defendant Village informed Defendant Swanlund that he had until April 18, 2024, to call Defendant Code Official and correct the violation.

56. On or about April 13, 2024, Ryan Fletcher, Captain of the Mt. Morris Fire Protection District, reported a Noise Fireworks complaint against Defendant Coltrain at 1 N. Wesley St. Upon information and belief, on or about April 13, 2024, Defendant Sutter with the

11

Mt. Morris Police Department, arrived at the Adjacent Premises and failed to arrest Defendant Coltrain for using fireworks, in violation of Title 5, Chapter 6, section 5-6-2, at the Adjacent Premises while he knew or should have known that the Adjacent premises was found uninhabitable by Defendant Village due to the lack of running water.

57. Between April 4, 2024, and April 16, 2024, Defendant Village knowingly failed to enforce health and safety ordinances by failing to put in place any temporary safeguards after it sent the April 4, 2024 letter, to ensure that there was no access to the Adjacent Premises, even after it knew Defendant Coltrain was shooting off fireworks at the Adjacent Property and that the property did not have any running water.

58. Whenever the code official believes there is … actual or potential danger to the building occupants or those in the proximity of any structure because of explosives…, the code official is authorized and empowered to order and require the occupants to vacate the premises forthwith. *See* IPMC at § 112.1.

59. If the code official believes there is imminent danger due to an unsafe condition, the code official shall order the necessary work to be done, including the boarding up of openings, to render such structure temporarily safe whether or not the legal procedure herein described has been instituted, and shall cause such other action to be taken as the code official deems necessary to meet such emergency. Id. at § 112.2.

60. Upon information and belief neither the Defendant Village nor Defendant Manheim condemned the property, on April 13, 2024, even after they knew, or should have known, that Defendant Coltrain was shooting off fireworks in and around the Adjacent Premises, which was in an unsafe condition especially knowing the Adjacent Premises did not have running water to safely put out a fire.

12

61. Upon information and belief, Amanda Newby went to Sharky's Sports Bar multiple times a week requesting to fill one to two one-gallon jugs of water, because she did not have running water at the Adjacent Premises.

62. Upon information and belief, Defendant Swanlund told Terry Newcomer, the bartender at Sharky's Sports Bar, when Defendant Coltrain first moved into the Adjacent Premises that it was not his problem that the place did not have water.

63. Upon information and belief, on or about April 16, 2024, Terry Newcomer saw Defendant Coltrain outside of the bar and heard approximately three to four bottle rocket fireworks go off at shortly after 1:00 p.m. A fire started at 1 N. Wesley St., and several explosions could be heard soon thereafter. The fire engulfed the Adjacent Premises and spread to SHARKY'S causing catastrophic damage to SHARKY'S.

64. Based on witness statements taken by the Mt. Morris Police Department, witnesses observed Defendant Coltrain igniting and launching multiple bottle rockets and other aerial fireworks from the front doorway area of 1 N. Wesley Street. According to witness Kerry Beckingham, one firework was launched in such close proximity that it nearly struck him as he walked past the property. Another firework struck the ground and ricocheted directly back into the lower unit of the Adjacent Premises, igniting combustible materials inside. Witness Robert Vandyke confirmed he was inside the unit when Coltrain launched fireworks and that at least one entered the residence, initially appearing to be a "dud" but ultimately sparking the fire. Law enforcement later recovered spent bottle rocket casings from the grassy area west of the property, approximately 25–30 yards from the structure. The Illinois State Fire Marshal concluded the fire originated in the southwest corner of the first floor of the Adjacent Premises, with the most probable ignition source being fireworks or sparks from a grinder.

65. Upon information and belief, witness Robert Vandyke ran into Sharky's Sports Bar asking for water to put out the fire.

66. Upon information and belief, soon thereafter, witness Amanda Newby ran into Sharky's Sports Bar with two one-gallon jugs and requested water to put out the fire.

67. Upon information and belief, Defendant Justin Coltrain ran into Sharky's Sports Bar and grabbed a mop bucket that had water and Dawn dish soap in it in order to put out the fire.

68. Despite their efforts to obtain water at Sharky's Sports Bar to put out the fire, ultimately, the lack of running water and lack of firefighting resources at the Adjacent Premises, allowed the rapid spread of flames which quickly spread and destroyed Sharky's Sports Bar.

69. Upon information and belief, the fire was started by Defendant Coltrain shooting off bottle rockets again in or near the Adjacent Premises.

70. Upon information and belief, all witnesses interviewed by the Mt. Morris Police Department, other than Defendant Coltrain, stated that the fire was started by Defendant Coltrain shooting off fireworks in or near the Adjacent Premises.

71. Despite the extensive damage, there was no immediate threat to public safety that would necessitate the urgent and immediate demolition and taking away of evidence related to the arson investigation of SHARKY'S or the Adjacent Premises.

72. On or about April 16, 2024, the same day of the fire, Defendant Village contracted with Defendant Wolber to demolish the Adjacent Premises, and Defendant Wolber started demolishing the Adjacent Premises, causing damage to SHARKY'S.

73. On or about April 17, 2024, one day after the fire, Defendant Village, knowingly allowed Defendant Wolber to continue to demolish the Adjacent Premises to SHARKY'S, causing additional damage to SHARKY'S.

14

74. On or about April 18, 2024, while knowing that an arson investigation was being conducted by the Illinois State Fire Marshall into the fire at 1 N. Wesley St., Defendant Village contracted with Defendant Moring Transit to haul away debris/evidence from the fire, which caused further damage to SHARKY'S.

75. Defendant Moring Transit, acting on behalf of Defendant Village, hauled away approximately 10.29 tons of debris/evidence from the unlawful demolition site of the Adjacent Premises.

76. Upon information and belief, by allowing the demolition the Adjacent Premises, without a court order, Defendants intentionally damaged Plaintiffs property and interfered with the scene of an arson investigation.

77. Pursuant to Title 9, Chapter 3, section 9-3-4 of the CODE entitled, "Notice of Dangerous Buildings," when a building or structure within the Village is found to be a, "dangerous building," or contains an unsafe condition, prior to any demolition, the Defendant Village was at all times relevant herein required to provide notice to all owners of record or persons having an interest therein.

78. Upon information and belief, Defendant Swanlunds did not receive notice or an opportunity to be heard at a hearing pursuant to Title 9, Chapter 3 section 9-3-4 of the CODE, nor 65 ILCS 5/11-31-1, prior to demolition of the Adjacent Premises and SHARKY'S.

79. Plaintiffs, who had an interest in the Adjacent Property due to the fire and resulting arson investigation, did not receive notice, or an opportunity to be heard at a hearing pursuant to Title 9, Chapter 3 section 9-3-4 of the CODE, nor 65 ILCS 5/11-31-1, prior to demolition of the Adjacent Premises and SHARKY'S.

80. Prior to causing the demolition of any unsafe building, Defendant Village was

15

required to apply to the Circuit Court of Ogle County for an order authorizing action to be taken, after providing at least 15 days' written notice by mail to the owners of the building pursuant to 65 ILCS 5/11-31-1.

81.	A demolition permit is also required prior to the demolition of any building pursuant to Title 9, Chapter 8 section 9-8-1 of the CODE.

82.	Neither the CODE nor Illinois Statute provides Defendant Labash or Defendant Village with emergency powers to demolish a building after a fire in the Village of Mount Morris, Illinois.

83.	On or about April 18, 2024, SHARKY'S boarded up all of the windows, added additional locks to the front and rear doors for added security, installed a no trespassing sign  on the main entry door, and installed a snow fence around the Adjacent Premises and SHARKY'S, to prevent trespassers from getting injured or stealing valuables, such as equipment, liquor, and money from the legal gambling machines located therein.

84.	It was not until approximately April 27, 2024, that Defendant Village posted a warning sign on the snow fence stating that, "The structure is unsafe and its occupancy has been prohibited by the code official."

85.	It was not until April 29, 2024, that Defendant Village installed a six-foot fence around the Adjacent Premises of SHARKY'S to ensure the safety of the community or protect the scene of the arson investigation from being trespassed.

86.	Despite installing a six-foot fence, Defendant Village, through the Chief of Police, Defendant Cicchetti, knowingly allowed Defendant Coltrain, and any other interested persons, to enter the unsafe structure on multiple occasions and take away debris/evidence and Plaintiffs property from the scene of the fire.

16

87. Defendant Chief, authorized, "The owner and anyone they deem necessary to get their stuff out of the debris," knowing there was an arson investigation pending, that the structure was unsafe, and its occupancy had been prohibited by the code official.

88. Upon information and belief, once a person entered the fenced in area, they had access to SHARKY'S as well.

89. In April of 2024, Plaintiff Steve Rossi, took a detailed inventory of the contents of SHARKY'S for insurance purposes. Upon information and belief, several items of property from SHARKY'S are missing due to the Defendant Chief allowing entry into the fenced in area of the scene of the fire.

90. The Illinois State Fire Marshal investigated the cause of the fire and reported on July 3, 2024, that the cause of the fire was undetermined.

91. The Illinois State Fire Marshal stated that entrance to the first floor was slowed due to the amount of the items stored floor to ceiling.

92. The July 3, 2024, report stated that, after speaking with Defendant Coltrain, the most probable ignition source at the area of origin was either careless use of fireworks or the possibility of sparks from using a grinder in the interior of the building, or Adjacent Premises.

93. The fire and dangerous explosion caused by the unlawful, reckless and negligent acts of the Defendants herein, and their agents, servants and employees, caused serious emotional injuries and pain and suffering to the Individual Plaintiffs.

94. The Corporate Plaintiffs were caused to sustain a complete loss of their properties and businesses, including loss of business sales, income, inventory, equipment, and the value of past, present and future business, as a result of the unlawful, reckless and negligent acts of the Defendants herein, and their agents, servants and employees.

17

95. The Corporate Plaintiffs' businesses, which were destroyed in the fire and subsequent explosions, were forced to close, property and equipment were destroyed, and business operations were halted, causing damage to the Corporate Plaintiffs.

96. Defendant Village knew that Defendant Swanlunds did not have insurance on the Adjacent Premises and that Plaintiffs intended on filing a civil lawsuit against Defendant Swanlunds.

97. Despite knowledge of impending litigation, on October 15, 2024, Defendant Village conducted a Special Meeting approving an Agreement between Defendant Swanlunds and Defendant Village for the Purchase of the Subject Property located at 1 N. Wesley St., Mt. Morris, Illinois.

98. The Defendant Village's purchase of the Adjacent Property was conducted without transparency and effectively complicates Plaintiffs' ability to seek full and fair relief.

99. On or about April 16, 2025, the one-year anniversary of the fire, Plaintiffs held a Press Conference in front of what used to be Sharky's Sports Bar, at 3 N. Wesley St., Mt. Morris, Illinois.

100. A Reporter with WIFR 23 News was present during the Press Release and published news reports on the one-year anniversary of the fire that destroyed Sharky's Sports Bar later that same day.

101. On Saturday, April 26, 2025, Plaintiffs counsel received a Certified Letter from the Defendant Village of Mt. Morris, Illinois, stating that several items needed to be addressed to bring the demolition cite at 3 N. Wesley St., into compliance, such as:

> 1. Remaining Demolition Work:
>    A ten-foot concrete wall located along the east side of the property still needs to be removed to a depth of at least twelve inches below grade. Additionally, a minimum of six inches of black dirt must be spread across the area for final grading and the site must be properly seeded.

18

2. Permit Expiration - Village Code 9-8-1 (Demolitions):
   Per Village Code, a demolition permit is valid for 120 days. Permit #24-50, issued on October 7, 2024, expired on February 7, 2025. A new permit must be obtained, and the associated permit fees must be paid in order to complete the remaining work.

3. Erosion Control - Village Code 9-8-G(E):
   Upon completion of grading and seeding, silt fencing must be installed to prevent erosion until adequate grass coverage has been established.

4. Restoration of Public Property-Village Code 9-8-6(F):
   Any public property damaged during demolition must be restored to its original condition. The sidewalk along S. Wesley was damaged by heavy equipment and must be replaced accordingly.

102. The certified letter was signed by Defendant Casper Manheim, in his official capacity as the Building & Code Enforcement Official for Defendant Village.

103. Defendants Village, Labash and Manheim's decision to send Plaintiffs the April 22, 2025, Certified Letter just four business days after the Press Release caused Plaintiffs to suffer a deprivation likely to deter free speech.

104. Melany and Doru Vidacan with Mulroy Demolition & Excavation, Plaintiffs demolition company, had several communications with Defendant Manheim, prior to the April 22, 2025, letter. The last conversation Melany Vidacan had with Defendant Manheim was on March 20, 2025, at which time Ms. Vidacan understood that the only thing left to do to complete the demolition was to add six inches of black dirt and fertilizer for final grading of the property.

105. Neither Plaintiffs, Melany Vidacan, Doru Vidacan, nor any other employee of Mulroy Demolition & Excavation were informed by Defendants Village, Labash, or Manheim, at any time that the demolition permit was expired, that a ten-foot concrete wall located along the east side of the property still needs to be removed to a depth of at least twelve inches below grade, that silt fencing must be installed, nor that the sidewalk in front of Sharky's needed to be

replaced, prior to receiving the letter dated April 22, 2025.

106.    Defendant Village, Labash and Manheim treated Plaintiffs differently than other demolition projects in Mt. Morris, Illinois, by selectively enforcing certain sections of the Mt. Morris Illinois CODE for Plaintiffs as compared to other demolition projects in Mt. Morris, Illinois.

**COUNT I:**
**COMPLAINT FOR MONELL LIABILITY (42 U.S.C. § 1983)**
**Decision by a Final Policymaker – Violation of Fourteenth Amendment**
**(Against Defendant Village)**

107.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

108.    Under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978), a municipality can be found liable under 1983 only where the municipality itself causes the constitutional violation at issue.

109.    At all times relevant herein, Defendant Village through the individual defendants, acting under color of State law, operated as policymakers and inflicted ongoing constitutional violations and torts upon Plaintiffs'.

110.    The above stated acts by the individual Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers.

111.    At all relevant times, the individual Defendants acted under color of State law, and in their respective individual and official capacity when they willfully, outrageously, maliciously and/or with reckless disregard of the consequences of their actions inflicted constitutional violations and outrageous torts upon the Plaintiffs.

112.    The Defendant President, personally and/or through his authorized agents, at all times relevant herein, acted as a final policymaker for whom the Defendant Village is liable, with

20

respect to the unlawful demolition and resulting damage to Plaintiffs.

113.    The Defendant Village delegated all policy decisions related to demolition to Defendant President and Board of Trustees. *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 9, Chapter 3 § 9-3-2.

114.    As the final policymaker for Defendant Village, Defendant President developed and maintained policies, procedures, customs and/or practices which exhibited deliberate indifference to the constitutional rights of Plaintiffs.

115.    Defendant President had a duty to comply with Title 9, Chapter 3, section 9-3-4 of the CODE entitled, "Notice of Dangerous Buildings," and 65 ILCS 5/11-31-1, by providing notice to all owners of record and SHARKY'S prior to demolition.

116.    Upon information and belief, Defendant President did not provide notice or an opportunity to be heard at a hearing to Defendant Swanlunds to Title 9, Chapter 3 section 9-3-4 of the CODE, nor 65 ILCS 5/11-31-1, prior to demolition of the Adjacent Premises and SHARKY'S.

117.    Defendant President did not provide notice to Plaintiffs, who had an interest in the Adjacent Property due to the fire and resulting arson investigation, did not receive notice, or an opportunity to be heard at a hearing, pursuant to Title 9, Chapter 3 section 9-3-4 of the CODE, nor 65 ILCS 5/11-31-1, prior to demolition of the Adjacent Premises and SHARKY'S.

118.    Defendant President failed to apply to the Circuit Court of Ogle County for an order authorizing action to be taken, after providing at least 15 days' written notice by mail to the owners of the building, or those with an interest in the building, pursuant to 65 ILCS 5/11- 31-1.

119.    Defendant President, his agents, servants and/or employees, damaged the Corporate Defendants' property and when he allowed the demolition of the Adjacent Premises and SHARKY'S, in violation of the above stated ordinance and statute.

120.    Defendant President's actions in demolishing Plaintiffs' properties without proper notice

21

or a hearing violated Plaintiffs' procedural due process rights under the Fifth and Fourteenth Amendments.

121. As a direct and proximate result of Defendant President's deliberate indifference to custom and practice, he caused the unconstitutional deprivation of the Plaintiffs' substantive and procedural due process rights.

122. As a direct and proximate result of Defendant President's deliberate indifference, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

<u>COUNT II</u>:
**VIOLATION OF PROCEDURAL DUE PROCESS (42 U.S.C. § 1983)**
**(Against Defendant President Individually)**

123. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

124. Defendant President had actual and constructive notice of the fire that started in the Adjacent Premises, which resulted in damage to SHARKY'S.

125. Defendant, President, was at all times relevant herein responsible to perform all duties as may be required of him by statute or ordinance.

126. Defendant President had a duty to comply with Title 9, Chapter 3, section 9-3-4 of the CODE entitled, "Notice of Dangerous Buildings," and 65 ILCS 5/11-31-1, by providing notice to all owners of record and SHARKY'S prior to demolition.

127. Upon information and belief, Defendant President did not provide notice, or an opportunity to present evidence at a hearing to Defendant Swanlunds to Title 9, Chapter 3 section 9-3-4 of the CODE, nor 65 ILCS 5/11-31-1, prior to demolition of the Adjacent Premises and SHARKY'S.

128. Defendant President did not provide notice, or an opportunity to present evidence

22

at a hearing to Plaintiffs, who had an interest in the Adjacent Property due to the fire and resulting arson investigation, pursuant to Title 9, Chapter 3 section 9-3-4 of the CODE, nor 65 ILCS 5/11-31-1, prior to demolishing the Adjacent Premises and SHARKY'S.

129.    Defendant President failed to apply to the Circuit Court of Ogle County for an order authorizing action to be taken, after providing at least 15 days' written notice by mail to the owners of the building, or those with an interest in the building, pursuant to 65 ILCS 5/11- 31-1.

130.    Defendant President's failure to comply with the above stated ordinance and statute, showed a deliberate indifference to Plaintiffs' constitutional rights.

131.    Defendant President's deliberate failure to provide notice, or an opportunity to present evidence at a hearing, to Plaintiffs' prior to demolishing the Adjacent Premises and SHARKY'S, violated Plaintiffs' procedural due process rights under the Fifth and Fourteenth Amendments.

132.    As a direct result, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

**COUNT III:**
**VIOLATION OF PLAINTIFFS FIFTH AMENDMENT RIGHTS**
**(Against Defendant Village)**

133.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

134.    Defendant President acted under the color of state law when he authorized the demolition of the adjacent property and removed evidence when he knew there was an arson investigation pending.

135.    The wrongful demolition of the Adjacent Property and removal of evidence without notice to the Plaintiffs by Defendant President deprived Plaintiffs of a constitutionally protected

23

property interest.

136.     The actions by the Defendant Village through the Defendant President deprived Plaintiffs of their property interest without due process.

137.     The lack of notice and opportunity to be heard before the demolition and removal of evidence constitutes a violation of Plaintiffs procedural due process rights under the Fourteenth Amendment, which is applicable to the states through the Fifth Amendment.

138.     As a direct result of the unlawful demolition by Defendant Village, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

**COUNT IV:**
**COMPLAINT FOR MONELL LIABILITY (42 U.S.C. § 1983)**
**Decision by a Final Policymaker – Violation of Fourth Amendment (Against Defendant Village)**

139.     Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

140.     Under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978), a municipality can be found liable under 1983 only where the municipality itself causes the constitutional violation at issue.

141.     The Defendant Chief of Police, personally and/or through is authorized agents, at all times relevant herein, acted as a final policymaker for whom the Defendant Village is liable, with respect to the unlawful trespass and taking of Plaintiffs property.

142.     As the final policymaker for Defendant Village Police Department, Defendant Chief of Police developed and maintained policies, procedures, customs and/or practices which exhibited deliberate indifference to the constitutional rights of Plaintiffs.

143.     Members of the Defendant Village Police Department have a duty to enforce all of

24

the ordinances and statutes in the Village and preserve order and prevent infractions of the laws and arrest violators thereof." *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 5, Chapter 1 § 5-1-3.

144. After the Defendant Village posted a warning sign on the snow fence stating that, "The structure is unsafe and its occupancy has been prohibited by the code official", and after installing a six-foot fence around the Adjacent Premises of SHARKY'S to ensure the safety of the community or protect the scene from being trespassed, Defendant Village, through Defendant Chief of Police, knowingly allowed Defendant Coltrain, and any other interested persons, to enter the unsafe structure on multiple occasions and take away debris/evidence and Plaintiffs property from the scene of an arson investigation.

145. Defendant Chief of Police, authorized, "the owner and anyone they deem necessary to get their stuff out of the debris."

146. Upon information and belief, once a person entered the fenced in area, they had access to SHARKY'S as well.

147. In April of 2024, Plaintiff Steve Rossi, took a detailed inventory of the contents of SHARKY'S for insurance purposes. Upon information and belief, several items of property from SHARKY'S are missing due to the Defendant Chief of police policy of allowing entry into the fenced in area of the scene of the fire, knowing that it was dangerous and that they took property from the scene.

148. The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures.

149. Plaintiffs had a reasonable expectation of privacy in the fenced-in area, which was part of an active arson investigation.

25

150. Defendant Chief of Police's authorization allowing individuals to enter the area and remove property constituted an unreasonable search and seizure, infringing on Plaintiff's possessory interests in the property.

151. As a direct and proximate result of Defendant Village's Chief of Police deliberate indifference to custom and practice, he caused the unconstitutional deprivation of the Plaintiffs' property rights.

152. As a direct and proximate result of Defendant Village's Chief of Police deliberate indifference, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

**COUNT V:**
**(42 U.S.C. § 1983)**
**Violation of Fourth Amendment**
**(Against Defendant Chief of Police Individually)**

153. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

154. The Defendant Chief of Police, personally and/or through his authorized agents, at all times relevant herein, authorized the unlawful seizure of Plaintiffs property without due process of law.

155. Defendant Chief of Police developed and maintained policies, procedures, customs and/or practices which exhibited deliberate indifference to the constitutional rights of Plaintiffs.

156. Members of the Defendant Village Police Department have a duty to enforce all of the ordinances and statutes in the Village and preserve order and prevent infractions of the laws and arrest violators thereof." *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 5, Chapter 1 § 5-1-3.

157. After the Defendant Village posted a warning sign on the snow fence stating that,

"The structure is unsafe and its occupancy has been prohibited by the code official", and after installing a six-foot fence around the Adjacent Premises of SHARKY'S to ensure the safety of the community or protect the scene from being trespassed, Defendant Chief of Police, knowingly allowed Defendant Coltrain, and any other interested persons, to enter the unsafe structure on multiple occasions and take away debris/evidence, including Plaintiffs property from the scene of an arson investigation.

158.    Defendant Chief of Police, authorized, "the owner and anyone they deem necessary to get their stuff out of the debris."

159.    Upon information and belief, once a person entered the fenced in area, they had access to SHARKY'S as well.

160.    In April of 2024, Plaintiff Steve Rossi, took a detailed inventory of the contents of SHARKY'S for insurance purposes.  Upon information and belief, several items of property from SHARKY'S are missing due to the Defendant Chief of police policy of allowing entry into the fenced in area of the scene of the fire, knowing that it was dangerous and that they took property from the scene.

161.    The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures.

162.    Plaintiffs had a reasonable expectation of privacy in the fenced-in area, which was part of an active arson investigation.

163.    Defendant Chief of Police's authorization allowing individuals to enter the debris area and remove property constituted an unreasonable search and seizure, infringing on Plaintiffs possessory interests in the property.

164.    As a direct and proximate result of Defendant Chief of Police deliberate

27

indifference to custom and practice, he caused the unconstitutional deprivation of the Plaintiffs' property rights.

165. As a direct and proximate result of Defendant Chief of Police deliberate indifference, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

## COUNT VI:
## COMPLAINT FOR MONELL LIABILITY (42 U.S.C. § 1983)
### Decision by a Final Policymaker
### (Against Defendant Village)

166. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

167. Under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978), a municipality can be found liable under 1983 only where the municipality itself causes the constitutional violation at issue.

168. Defendant Code Official, was in charge of implementing, administrating and enforcing the provisions of the Property Maintenance Code. *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 9, Chapter 2 § 9-2-2, B.

169. The Defendant Code Official, personally and/or through his authorized agents, at all times relevant herein, acted as a final policymaker for whom the Defendant Village is liable, with respect to the decision to allow Defendant Coltrain to reside at the Adjacent Premises knowing that the residence was uninhabitable.

170. As the final policymaker for the Defendant Village Building Department, Defendant Manheim developed and maintained policies, procedures, customs and/or practices which exhibited deliberate indifference to the constitutional rights of Plaintiffs.

171. At all times relevant herein, Defendant Village, through its Building Department,

28

was charged with ensuring the safe and lawful use and occupation of buildings and properties through enforcement of Code and IPMC. The Building Department is responsible for, among other things, performing plan examinations, issuing construction permits, and inspecting properties.

172.    On or about January 5, 2023, Defendant Village disconnected the water service to the Adjacent Premises, due to an outstanding water bill of $898.74 for more than 30 days, pursuant to Village Code Title 8, Chapter 1, 8-1-7(A)(2).

173.    Upon information and belief, Defendant Village knew that the water was disconnected at the Adjacent Premises from January 5, 2023, until April 4, 2024, because the water is not allowed to be shut off until a hearing had been held, and the Village President made a decision on the basis of evidence presented at the hearing. *See* Village of Mt. Morris, Illinois Code of Ordinances, Title 8, Chapter 1 § 8-1-7(A)(1).

174.    Upon information and belief, there is no mention in the Village of Mt. Morris, Illinois meeting minutes regarding a hearing prior to January 5, 2023, that was conducted to decide whether to shut off the water at the Adjacent Premises as required by the CODE.

175.    Defendant Village allowed Defendant Coltrain to reside in the Adjacent Premises from January 5, 2023, until April 4, 2024, knowing that he had no running water and that he was only separated from SHARKY'S, a commercial business establishment, by a common wall.

176.    As a direct and proximate result of Defendant Village's Code Enforcement Official's deliberate indifference to custom and practice, Defendant Village caused the unconstitutional deprivation of the Plaintiffs' property rights.

177.    As a direct and proximate result of Defendant Village's Code Enforcement Official's deliberate indifference, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

29

**COUNT VII:**
**COMPLAINT FOR MONELL LIABILITY (42 U.S.C. § 1983)**
**Informal Custom**
**(Against Defendant Village)**

178.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

179.    Under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978) a municipality can be found liable under 1983 only where the municipality itself causes the constitutional violation at issue.

180.    Pursuant to the Defendants' persistent widespread custom and unofficial policy, of failing to provide notice pursuant to the CODE prior to a demolition, failing to ensure all buildings are habitable and safe, and allowing members of the community to enter the scene of an arson investigation, resulted in the violation of Plaintiffs' rights, as alleged herein.

181.    Defendant Village, as a matter of custom, practice or de facto policy through its policymakers, maintained a policy, custom or practice of failing to provide notice pursuant to the CODE prior to a demolition, failing to ensure all buildings are habitable and safe, and allowing members of the community to enter the scene of an arson investigation, resulted in the violation of Plaintiffs' rights, as alleged herein.

182.    Defendants knew, or should have known, that each policy, custom or practice of Defendants posed serious harm to Plaintiffs.

183.    Defendants developed, ratified, enforced, and continue to enforce the official Village policy and/or longstanding custom with reckless and callous disregard for the constitutional rights of Plaintiffs.

184.    By reason of widespread custom and unofficial policy, Defendant Village deprived Plaintiffs of the rights, immunities, and privileges guaranteed to every person in the United States,

in violation of 42 U.S.C. § 1983, including but not limited to rights guaranteed by the Fourteenth Amendment of the United States Constitution.

185.    As a direct and proximate result of Defendants deliberate indifference, reckless and/or conscious disregard of their duties, it caused the unconstitutional deprivation of the Plaintiffs' substantive and procedural due process rights.

186.    As a direct and proximate result of Defendants deliberate indifference, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

**COUNT VIII:**
**FAILURE TO TRAIN AND SUPERVISE**
**(Against Defendant Village)**

187.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

188.    Under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978) a municipality can be found liable under 1983 only where the municipality itself causes the constitutional violation at issue.

189.    Defendant Village was negligent and derelict in its duties and responsibilities by, including but not limited to, failing to provide notice pursuant to the CODE prior to a demolition, failing to ensure all buildings are habitable and safe, and allowing members of the community to enter the scene of an arson investigation, which resulted in the violation of Plaintiffs' rights, as alleged herein.

190.    Defendant Village's failure to provide notice pursuant to the CODE prior to a demolition, failure to ensure all buildings are habitable and safe, and permitting members of the community to enter the scene of an arson investigation, resulted in the violation of Plaintiffs'

rights, as alleged herein.

191. Defendant Village had a duty to properly train personnel to ensure all ordinances and statutes are followed.

192. But for the failure of Defendant Village to properly train their agents, contractors and employees under state law, Plaintiffs would not have suffered the injury to property, severe emotional distress, and other damages.

193. As a direct and proximate result of Defendant Village's negligence, Plaintiffs suffered severe emotional distress and financial losses, including the complete destruction of properties and cessation of business operations.

## COUNT IX:
## PUBLIC NUISANCE
### (Against Defendant Village)

194. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

195. Under Illinois law, a public nuisance is an unreasonable interference with a right common to the general public, which includes activities that interfere with the health, safety, or welfare of the community.

196. The Defendant Village had a duty to maintain public health and safety by enforcing its ordinances and codes, including the Mt. Morris Village Code ("CODE") and the 2021 Property Maintenance Code.

197. The Defendant Village knowingly failed to enforce health and safety ordinances related to the Adjacent Premises at 1 N. Wesley St., which was unfit for human occupancy due to the lack of running water, disrepair, and ongoing illegal activities as early as January 2023.

198. Despite being aware of the dangerous and unlawful conditions at the Adjacent Premises,

32

the Defendant Village allowed the property to remain occupied and failed to take timely and appropriate action to abate these conditions.

199. The Defendant Village's failure to abate the public nuisance and failure to enforce its codes and ordinances allowed the Adjacent Premises to become a dangerous building, posing a significant risk to the health, safety, and welfare of the public and neighboring properties, including SHARKY'S.

200. The fire that originated at the Adjacent Premises on April 16, 2024, was a direct result of the Defendant Village's failure to address the dangerous conditions, constituting an unreasonable interference with public safety.

201. The Village's actions and omissions created and maintained a public nuisance by:

    a. Allowing the continued occupancy of an uninhabitable and unsafe structure adjacent to a commercial building;

    b. Failing to abate the public nuisance at the Adjacent Premises; and

    c. Neglecting to implement necessary safeguards to protect the public and neighboring properties.

202. As a direct and proximate result of the Defendant Village's creation and maintenance of a public nuisance, Plaintiffs suffered special damages distinct from those suffered by the general public, including but not limited to:

    a. Destruction of their property and businesses.

    b. Loss of business income and future earnings.

    c. Emotional distress and mental anguish experienced by Individual Plaintiffs.

**COUNT X:**
**NEGLIGENCE – Demolition -**
**(Against Defendants' Village, Wolber and Moring Transit)**

203. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

204. Defendant Village had actual and constructive notice of the fire that started in the Adjacent Premises, which resulted in damage to SHARKY'S.

205. Defendant Village, its agents, servants and/or employees, caused damage to SHARKY'S when they demolished the Adjacent Premises.

206. The Defendant Village had a duty to comply with the CODE by providing notice to SHARKY'S prior to demolition.

207. The Defendant Village had a duty to comply with 65 ILCS 5/11-31-1 by providing notice to SHARKY'S prior to demolition.

208. The Defendant Village had a duty under 745 ILCS 10/3-102(a) to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used.

209. Pursuant to Section 385 of the Restatement of Torts, the Defendant Village created a dangerous condition on land and can be held liable for any resulting injuries even when the defendant is not the owner or possessor of the land.

210. Defendant Wolber was acting as an agent of Defendant Village and had a duty to conduct the demolition in a safe manner so as not to cause damage to SHARKY'S.

211. Defendant Wolber had the duty to not create a force or instrument of harm in the performance of their work on the Adjacent Premises to SHARKY'S.

212. Defendant Moring Transit was acting as an agent of Defendant Village when it hauled away debris/evidence from the unlawful demolition and had a duty to conduct the

34

demolition in a safe manner so as not to cause subsequent damage to SHARKY'S.

213. Defendant Moring Transit had a duty to not create a force or instrument of harm in the performance of their work on the Adjacent Premises to SHARKY'S.

214. Defendant Village through Defendant Cicchetti had a duty to ensure that no persons entered the scene of an active arson investigation.

215. Each of the Defendants had a duty to the Plaintiffs to not cause further property damage to SHARKY'S.

216. Defendants Village, Wolber, and Moring Transit were grossly negligent and reckless in the management and supervision of the demolition of the Adjacent Premises.

217. At all times relevant herein, Defendant Village was reckless, careless and negligent in violating applicable laws, rules and regulations, namely 65 ILCS 5/1–4–7 for failing to provide notice to Plaintiffs prior to demolishing the Adjacent Premises, which caused damage to SHARKY'S and the Adjacent Premises.

218. At all times relevant herein, Defendant Village was reckless, careless and negligent in violating applicable laws, rules and regulations, namely 65 ILCS 5/11-31-1, for injury to SHARKY'S due to the unlawful demolition of the Adjacent Premises.

219. At all times relevant herein, Defendant Village was reckless, careless and negligent in violating applicable laws, rules and regulations, namely Section 112.2 of the 2021 Property Maintenance Code, by failing to put in place any temporary safeguards after it sent the April 4, 2024, letter.

220. At all times relevant herein, Defendant Village was grossly negligent and reckless for failing to condemn the Adjacent Property as unfit for human occupancy after the water was discontinued on the Adjacent Premises on January 5, 2023.

221. At all times relevant herein, Defendant Village's conduct was willful or wanton in that it shows the utter indifference to or conscious disregard for the safety of others or their property.

222. Because of the foregoing, the Corporate Plaintiffs sustained severe economic injuries, including but not limited to loss of business sales, income, inventory, equipment, value of past, present and business and goodwill of business.

223. Because of the foregoing, the Individual Plaintiffs sustained economic and emotional injuries.

224. By reason of the foregoing, all Plaintiffs were damaged in sums which exceed the jurisdictional limits of the court which will be determined at trial.

225. Due to the foregoing negligent, reckless, egregious and wanton conduct of the Defendants, and their complete disregard for public safety, Plaintiffs demand an award of damages against all Defendants'.

**COUNT XI:**
**NEGLIGENCE – Damage to Property**
**(Against Defendants' Village, Chief Cicchetti, Casper Manheim,**
**and Casper's Home Inspection, LLC)**

226. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

227. The Defendants had a duty to ensure the health, safety, property protection and general welfare of the structures and premises therein pursuant to IPMC section 101.3.

228. The Defendants had a duty to ensure that no persons entered the debris area due to the unsafe conditions of the Adjacent Premises and SHARKY'S.

229. Defendant Manheim had a duty to condemn the Adjacent Premises as of January 5, 2023, pursuant to IPMC section 111.1, because it was uninhabitable due to the lack of running

water.

230. At all times relevant herein, Defendants were reckless, careless and grossly negligent by violating applicable laws, rules and regulations as stated in the Code and IPMC.

231. Defendant Village's conduct was willful or wanton in that it shows an utter indifference to or conscious disregard for the safety of others or their property.

232. Defendant Cicchetti breached his duty by allowing anyone the owner deems necessary to enter the fenced in area to rummage around in the debris/evidence.

233. Defendant Cicchetti's decision to allow anyone the owner deems necessary to enter the fence area to rummage around in the debris/evidence was an abuse of discretion and was willful or wanton conduct which led to the destruction or alteration of critical evidence, thereby hindering the investigation and any subsequent legal proceedings, and constituted the utter indifference to or conscious disregard for the safety of others or their property.

234. Defendant Cicchetti breached his duty to prevent infractions of the laws and arrest violators thereof by failing to conduct a full investigation and arrest Defendant Coltrain for Arson, which shows an utter indifference to or conscious disregard for the safety of others or their property.

235. Defendant Manheim's decision to allow Defendant Coltrain to remain living at the Adjacent premises, knowing that it was uninhabitable from January 5, 2023, until April 4, 2024, shows an utter indifference to or conscious disregard for the safety of others or their property.

236. By failing to condemn the Adjacent Premises from January 5, 2023, until April 4, 2024, due to its uninhabitability because of the lack of running water, it was foreseeable that Plaintiffs' property could be damaged if a fire broke out at the Adjacent Property.

237. By failing to condemn the Adjacent Premises on or about April 13, 2024, after

Defendant Coltrain was seen shooting off fireworks on the Adjacent Premises, it was foreseeable that Plaintiffs' property could be damaged if a fire broke out at the Adjacent Property.

238.   Because of the foregoing, the Corporate Plaintiffs sustained severe economic injuries, including but not limited to loss of business sales, income, inventory, equipment, value of past, present and business and goodwill of business.

239.   Because of the foregoing, the Individual Plaintiffs sustained economic and emotional injuries.

240.   By reason of the foregoing, all Plaintiffs were damaged in sums which exceed the jurisdictional limits of the court which will be determined at trial.

241.   Due to the foregoing negligent, reckless, egregious and wanton conduct of the Defendants, and their complete disregard for public safety, Plaintiffs demand an award of damages against Defendants.

**COUNT XII**
**PREMISES LIABILITY – FAILURE TO MAINTAIN A SAFE PREMISES**
**(Against Defendant Brock Swanlund and Heather Swanlund)**

242.   Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

243.   At all times relevant herein, Defendants Brock Swanlund and Heather Swanlund owned Adjacent Premises.

244.   As property owners, Defendants Brock Swanlund and Heather Swanlund had a duty to exercise reasonable care int eh ownership, maintenance and control of their property so as not to cause injury to neighboring property owners and occupants, including Plaintiffs.

245.   Pursuant to Village Code Title 8, Chapter 1, 8-1-3(A), Defendant Swanlunds, as the property owners of 1 N. Wesley Avenue, were responsible for payment of water service

charges.

246. The lack of running water at the Adjacent Premises from January 5, 2023, until April 16, 2024, created a dangerous condition as there was no means to extinguish a fire should one occur.

247. Defendants Brock Swanlund and Heather Swanlund knew or should have known about the dangerous condition.

248. Defendants Brock Swanlund and Heather Swanlund knew that the water service to the Adjacent Premises had been disconnected on January 5, 2023, as evidenced by the water bills they received and Defendant Brock Swanlund's statement to a Sharky's bartender that it was "not his problem" that the place did not have water.

249. Despite the lack of water and unsafe condition, the Swanlund Defendants permitted their tenant, Justin Coltrain, to continue residing at the Swanlund Property and to use the premises in an unsafe and hazardous manner.

250. Defendants Brock Swanlund and Heather Swanlund failed to pay the outstanding water bill, failed to restore water service to the Adjacent Premises, and failed to evict their tenant, Defendant Coltrain, despite knowing that the property was uninhabitable and posed a danger to adjacent properties.

251. On or about April 16, 2024, Coltrain engaged in the use of fireworks, including the discharge of bottle rockets, within or immediately adjacent to the Defendants' property.

252. The discharge of fireworks caused a fire to ignite on the Defendants' property, which quickly spread and caused catastrophic damage to Plaintiffs' property at Sharky's Sports Bar.

253. Due to the absence of running water at the Defendants' property, immediate efforts

39

to extinguish or control the fire at its origin were prevented or substantially hindered. Witnesses, including but not limited to Robert Vandyke, Amanda Newby, and Justin Coltrain, were forced to run into Sharky's Sports Bar to seek water in an effort to fight the flames.

254. The unsafe condition of the Swanlunds property, including the lack of water service and the continued occupancy of their tenant under hazardous conditions, created a foreseeable and unreasonable risk of harm to Plaintiffs.

255. The Swanlund Defendants breached their duty of care by failing to:

a. Pay for and maintain water service to the property, as required under Village Code § 8-1-7(A)(1);

b. Maintain their property in a reasonably safe condition;

c. Prevent or restrict dangerous use of the premises, including fireworks discharge; and

d. Protect neighboring property owners, including Plaintiffs, from foreseeable fire hazards emanating from the Defendants' Property.

256. As a direct and proximate result of the Defendant Swanlunds' breaches of duty, and failure to maintain their property in a reasonably safe condition, the April 16, 2024, fire spread to Plaintiffs' property at Sharky's Sports Bar, causing destruction of the building, loss of business, and other damages.

257. Due to the foregoing negligent conduct of the Defendants, and their complete disregard for public safety, Plaintiffs demand an award of damages against Defendants.

**COUNT XII**
**NEGLIGENCE**
**(Defendant Coltrain)**

258. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

40

259. As a tenant of the Adjacent Property, Defendant Coltrain had a duty to maintain the Adjacent Property in reasonably good condition and to prevent foreseeable harm.

260. Upon information and belief, Defendant Coltrain was grossly negligent and reckless in the maintenance of the Adjacent Premise, by recklessly using fireworks in or near the Adjacent premises, which may have contributed to the fire and explosion complained of herein.

261. Upon information and belief, Defendant Coltrain was grossly negligent and reckless in the maintenance of the Adjacent Premises by allegedly using a grinder inside the Adjacent Premises knowing he did not have running water and that the grinder may cause sparks, which may have contributed to the fire and explosion complained of herein.

262. Defendant breached this duty by:

    a.    Allowing illegal activities to occur on the premises;

    b.    Failing to maintain the property in compliance with health and safety codes; and

    c.    Ignoring notices regarding the uninhabitable condition of the property.

263. As a direct and proximate result of Defendant's negligence, Plaintiffs suffered damages, including property loss, business interruption, and emotional distress.

### COUNT XIV
**Intentional Infliction of Emotional Distress**
**(Individual Defendants)**

264. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

265. The Individual Defendants engaged in extreme and outrageous behavior as detailed above.

266. Defendant Manheim's failure to condemn the Adjacent Premises after he knew or should have known that Defendant Coltrain was shooting fireworks off and that the Adjacent

Premises was uninhabitable due to lack of running water to put out a fire was extreme and outrageous conduct that caused severe emotional distress to the Plaintiffs.

267. Defendant Villages demolition of the property without providing due process was extreme and outrageous conduct that caused severe emotional distress to the Plaintiffs'.

268. Defendant Cicchetti's failure to arrest Defendant Coltrain and his decision to allow anyone in the scene of an arson and take out Plaintiffs property was extreme and outrageous conduct that caused severe emotional distress to the Plaintiffs'.

269. The Individual Defendants extreme and outrageous conduct was so "outrageous" and "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *See Felmeier v. Feltmeier,* 207 Ill. 2d 263, 269 (2003).

270. As a direct and proximate result of the Individual Defendants' extreme and outrageous conduct, Individual Plaintiffs were injured and suffered severe emotional distress and actual damages.

<u>COUNT XV</u>
**Complaint for INJUNCTIVE RELIEF – 735 ILCS 5/11-101**
**(Defendant Village)**

271. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

272. Defendant Village knew that Defendant Swanlunds did not have insurance on the Adjacent Premises and that Plaintiffs intended on filing a civil lawsuit against Defendant Swanlunds.

273. Despite knowledge of impending litigation, on October 15, 2024, Defendant Village conducted a Special Meeting approving an Agreement between Defendant Swanlunds and Defendant Village for the Purchase of the Adjacent Property located at 1 N. Wesley St., Mt. Morris,

42

Illinois.

274. The Defendant Village's purchase of the Adjacent Property was conducted without transparency and effectively complicates Plaintiffs ability to seek full and fair relief.

275. Given that the Adjacent Property was involved in a fire that caused significant damage to SHARKY'S, Plaintiffs possess a clearly ascertainable right or interest in the Adjacent Premises.

276. Plaintiffs have a clearly ascertainable right in need of protection, specifically the right to seek full and fair relief for the destruction of their business.

277. Due to the Defendant Village's purchase of the Adjacent Premises, knowing that Defendants Swanlund had no insurance and, upon information and belief, no additional assets, Plaintiffs have suffered irreparable harm, and if the Defendant Village's purchase of the Adjacent Property is allowed to stand, it complicates Plaintiffs ability to seek full and fair relief in that no redress or compensation can be had at law.

278. The Defendant Village's purchase of the Adjacent Premises provided the Plaintiffs no adequate remedy at law, monetary damages cannot adequately compensate for the injury and the injury cannot be measured by pecuniary standards.

279. Plaintiffs are likely to succeed on the merits of their complaint, as the Defendant Village's actions were conducted without transparency and in knowledge of impending litigation.

280. The Plaintiffs will suffer more harm without the injunction than the Defendant Village will suffer with the injunction.

**COUNT XVI**
**Complaint for UNJUST ENRICHMENT**
**(Defendant Village)**

281. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106

43

as if set forth fully herein.

282. Defendant Village has unjustly retained a benefit to the Plaintiffs' detriment by purchasing the Adjacent Premises knowing that Defendants Swanlund had no insurance and, upon information and belief, no additional assets.

283. The Defendant Village has unjustly retained the benefit of the Adjacent Property to Plaintiffs detriment.

284. Defendant Village's retention of the benefit violates the fundamental principles of justice, equity, and good conscience, as it was done with knowledge of impending litigation and without transparency.

285. The circumstances indicate that the Defendant Village's actions were not intended to be gratuitous and were conducted in a manner that complicates Plaintiffs ability to seek full and fair relief.

**COUNT XVII**
**42 U.S.C. § 1983 DEPRIVATION OF FIRST AMENDMENT RIGHT OF SPEECH**
(Defendants Village of Mt. Morris, Illinois, Phil Labash, Casper Manheim and Casper Home Inspection)

286. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

287. Plaintiffs' right to speak, write, and publish freely and petition the government is protected under Article 1, Section 4 of the United States Constitution, free from retaliation.

288. As described more fully above in Paragraphs 90-97, Plaintiffs engaged in protected speech on a matter of public concern, when they held a Press Conference on April 16, 2025, the one-year anniversary of the fire.

289. As a result of the Plaintiffs' protected activity, Defendants retaliated against them in the manner described in the preceding paragraphs.

44

290. Defendants intended by each of the actions described in the preceding paragraphs to punish and retaliate against Plaintiffs for exercising their First Amendment Rights and deterring them and others from exercising such rights in the future.

291. Plaintiffs have suffered harm due to Defendants' actions and have been deprived of their rights secured under the First Amendment to the United States Constitution. This deprivation of Plaintiffs' constitutional rights is actionable pursuant to 42 U.S.C. § 1983.

292. Defendants acts have caused Plaintiffs' damages such as stress, the threat of unlawful penalties, inconvenience, legal fees, future financial losses, and other compensatory and consequential damages.

**COUNT XVIII**
**42 USC § 1983 Policy to Retaliate against Plaintiffs**
**to Suppress their First Amendment Rights**
(Defendant Village of Mt. Morris, Illinois)

293. Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 106 as if set forth fully herein.

294. Defendant Labash, as the Village President of the Defendant Village, is the final policymaker for Defendant Village.

295. Defendant Labash's duties as Village President are executive, not legislative. He has no legal authority to selectively enforce municipal violations in the Village of Mt. Morris, Illinois.

296. Defendant Manheim was the final policymaker for the Defendant Village Building Department.

297. Through its employees and agents and at the behest of Defendants Labash and Manheim, Defendant Village retaliated against and targeted Plaintiffs by selectively enforcing ordinances against them, including possible civil penalties, and depriving them of their rights

45

guaranteed under the First Amendment to the United States Constitution and 42 U.S.C. § 1983 such as the freedom to express themselves, speak, and associate freely on matters of public concern, such as grieving government actions.

298.   The actions described above collectively show harassment and retaliation of Plaintiffs by local officials acting under color of law.

299.   At all times material to this Complaint, the Defendant Village maintained:

   a)  a policy, practice, or custom, sanctioned by Defendant Labash and Defendant Manheim, who were motivated by an improper animus of taking adverse action against Plaintiffs, while not enforcing ordinance violations against others in the community.

   b)  a policy, practice, or custom of allowing and encouraging code enforcement officers to pick and choose which community members are subject to ordinance violations; and/or of failing to provide its code enforcement officers adequate training to ensure the ordinance code is applied in a non-discriminatory and non-retaliatory manner; and

   c)  a policy, practice, or custom of failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control people in its employ.

300.   The policies, practices, and/or customs as set forth above were maintained by Defendants with deliberate indifference towards Plaintiffs' constitutionally protected rights.

301.   The aforementioned actions reflect an official policy, custom, or practice of penalizing residents and business owners for discriminatory reasons and based on illegitimate animus in violation of the First Amendment of the United States Constitution, and were committed,

46

condoned, and perpetuated at the hands of policymakers and those to whom policy-making authority has been delegated. The policymakers actions become official actions of the Defendant Village of Mt. Morris, Illinois, under *Monell*, for which the Defendant Village should be held accountable as well.

302.    As a result of employing the foregoing express acts espoused by Defendant Village through its final policymakers, Defendants Labash and Manheim, to retaliate against Plaintiffs, Plaintiffs suffered harm including, without limitation, loss of income, loss of enjoyment of life, and severe emotional distress.

**WHEREFORE,** Because of the foregoing, Plaintiffs respectfully request that this Court:

  a.  Grant Injunctive relief preventing Defendant Village from retaining the Adjacent Property;

  b.  Award Plaintiffs damages for unjust enrichment;

  c.  Award Plaintiffs damages for lost profit, lost income, inventory, equipment, value of the business and goodwill of the business;

  d.  Award Plaintiffs compensatory damages for emotional distress;

  e.  Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S. Code § 1988;

  f.  Award Plaintiffs Punitive Damages against Defendant Labash and Defendant Manheim.

  g.  Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims in this Complaint.

Dated: September 1, 2025,                                   Respectfully Submitted,

47

48

By: /s/ Renee Cook
Renee Cook Attorney
IARDC No.: 6288807
Cook Law Office PLLC
1075 Oakleaf Plantation Pkwy.
St3. 304, #239
Orange Park, FL 32065
Tel: (815) 243-2439
Renee@cooklawofficepllc.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I mailed a copy of the foregoing to Brock and Heather Swanlund via Certified Mail, and presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, which will automatically send email notification of all documents required to be served by Fed. R. Civ. P. 5(a) in a manner authorized by Fed. R. Civ. P. 5(b) and (c), to the attorneys of record on this 1st day of September 2025.

By:  /s/  *Renee Cook*
Renee Cook